Renee J. Waters
Principal Assistant City Attorney for
Michael G. Rankin
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ  85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Renee.Waters@tucsonaz.gov
State Bar No. 031691
*Attorneys for Defendants City of Tucson, Nicolo Solarino, Francisco Santa Maria, Marco Durazo, Sean Yeandle, Henry Gamez, Donovan Vance, Ryan Ake, Joseph Gradias, Eric Evans, Scott Ellis, Raymond Fleck, Silas Spencer, Keith Goldstein (hereafter "City Defendants")*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Briseno, on her own behalf and as the personal representative of the estate of Damian Eryko Alvarado,<br><br>Plaintiff,<br><br>vs.<br><br>City of Tucson; Nicolo Solarino (Tucson Police); Francisco Santa Maria (Tucson Police); Marco Durazo (Tucson Police); Sean Yeandle (Tucson Police); Henry Gamez (Tucson Police); Donovan Vance (Tucson Police); R. Ake (Tucson Police); Joseph Gradias (Tucson Police); Eric Evans (Tucson Police); Scott Ellis (Tucson Police); Raymond Flex (Tucson Fire); Silas Spencer (Tucson Fire); Keith Goldstein (Tucson Fire); and Justin Canovali (private citizen), all in their individual capacities,<br><br>Defendants. | No. 4:22-cv-00132<br><br>**CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>(Assigned to Hon. Raner C. Collins) |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants City of Tucson, Nicolo Solarino, Francisco Santa Maria, Marco Durazo, Sean Yeandle, Henry Gamez, Donovan Vance, Ryan Ake, Joseph Gradias, Eric Evans, Scott Ellis, Raymond Fleck, Silas Spencer, and Keith Goldstein (hereafter "City Defendants" or identified individually by last name), hereby move to dismiss Plaintiff's Complaint for Damages. The individual defendants are

1

entitled to qualified immunity, the City of Tucson is entitled to sovereign immunity, Plaintiff fails to state a claim upon which relief may be granted, and Plaintiff has failed to join all necessary parties to the action.

**I.  Plaintiff's failure to join all necessary parties unreasonably prejudices Defendants and compromises the decedent's minor child's claim.[1]**

Plaintiff, Irene Briseno ("Briseno"), brings this claim on behalf of decedent, Damian Alvarado's ("Alvarado"), estate as well as one count (VIII) on her own behalf. The Complaint includes a claim for wrongful death under Arizona state law. The decedent's minor child has not been included as a party in this action.[2] A minor child is a necessary party to a wrongful death action. A.R.S. § 12-612(A)

Fed. R. Civ. P. 19 and Ariz. R. Civ. P. 19 govern the joinder of parties. The rules contain identical provisions, setting forth the circumstances under which a party must be joined if feasible. These include where complete relief among the parties cannot be met in the party's absence, whether the non-joined party's interests may be harmed by their absence, and whether the party's absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or other inconsistent obligations…"

It is not sufficient for Briseno to bring the claim in the name of Alvarado's estate even though decedent's minor child is a statutory beneficiary of the estate. See *Benedict v. Total Transit Inc.*, 252 Ariz. 151 (Ct. App. 2021) (Under A.R.S. § 12-612(A), a decedent's child is both a statutory plaintiff and beneficiary. Therefore, a minor child has a right, separate and apart from the estate, to bring a claim, which may be brought on the minor's behalf and in his name through an appropriate representative.).

---

[1] After conferring on this issue, Plaintiff agrees that this must be resolved but not agree that, in lieu of resolution, dismissal is appropriate.

[2] Defendants submit Exhibit 1, a copy of a petition filed in Pima County Superior Court Case No. PB2021-0814, in which Plaintiff identifies a minor child as an heir to decedent's estate. The petition is a state court record of which this Court may take judicial notice without converting Defendants' motion into a Motion for Summary Judgment. See *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001).

**II.    The individually named Tucson Fire Department personnel and Tucson Police officers are entitled to qualified immunity.**

Plaintiff brings several claims under 42 U.S.C. § 1983 against the individual police and fire defendants. As government officials, both the fire paramedics and police officers are entitled to qualified immunity. The burden, then, is on Plaintiff to proffer clearly established law with respect to each claim that would have put a governmental official on notice that his conduct would violate the constitution.

Qualified immunity shields government officials "from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, courts apply a two-part inquiry, asking whether a plaintiff has demonstrated the violation of a constitutional right and, if so, whether the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The clearly established right in question must be particularized such that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Questions of qualified immunity should be resolved at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This is because qualified immunity it meant to protect government officials from suit, not merely serve as a defense against liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The qualified immunity standard is inherently forgiving of reasonable mistakes of judgment, "protecting all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

**A.    Tucson Fire Department personnel are entitled to qualified immunity.**

Plaintiff brings one § 1983 claim against Tucson fire personnel Fleck, Spencer, and Goldstein for an alleged Fourteenth Amendment violation of Alvarado's due process rights

3

for deliberate indifference to an objectively serious medical need.³ To prevail on Count VII against the paramedics, Plaintiff must demonstrate that the paramedics were aware of a substantial risk of harm and that they were deliberately indifferent to it." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). Mere negligence or medical malpractice is insufficient to demonstrate a constitutional violation. *Ibid*, citing *Broughton v. Cutter Lab'ys*, 622 F.2d 458, 460 (9th Cir. 1980).

      Here, Plaintiff's Complaint alleges that paramedics spent eight minutes evaluating Alvarado before determining that he was stable. (Doc. 1, ¶ 144). Further, the Complaint intimates that the paramedics should have noticed that, in the five minutes after their evaluation, Alvarado "stopped moving and stopped making noises." (Doc. 1, ¶ 145). However, nowhere does the Complaint allege that the medical evaluation indicated Alvarado had a serious medical need, nor does it allege that paramedics were ever aware Alvarado was in distress and failed to address it. At *most*, the Complaint alleges that paramedics were negligent when they failed to notice the change in Alvarado's behavior and further investigate it. That type of allegation of negligence cannot meet the required showing for deliberate indifference. Vitally, there is no contention that paramedics were incorrect in their medical evaluation; based on the information in the Complaint, Alvarado was medically stable at the time he was evaluated and, at some point within the five minutes following the evaluation, he suffered cardiac arrest.

      Because the facts as alleged in the Complaint do not state a claim for deliberate indifference to a serious medical need, the paramedics are entitled to qualified immunity.

---

³ The Ninth Circuit construes these claims, when brought against arresting officers, as Fourth Amendment claims for excessive force. See *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090 (9th Cir. 2006). Whether construed as a claim brought under the Fourth or Fourteenth Amendment, the showing required is the same. Plaintiff must demonstrate that the defendant was aware of the medical condition or need, intentionally failed to address it, and the failure placed the plaintiff at risk of serious harm. *Lolli v. Cnty. of Orange*, 351 F.3d 410 (9th Cir. 2003). Additionally, the law is more fully developed as it relates to medical personnel in the prison context in claims brought under the Eighth Amendment.

### B.  Tucson Police officers are entitled to qualified immunity.

Plaintiff brings four[4] § 1983 claims against all the individual police officers and an additional claim against Officer Solarino ("Solarino"). These claims include Count I, a Fourth Amendment claim for excessive force, Count VI, a Fourteenth Amendment claim for failure to intervene, and Count VII, a Fourteenth Amendment claim for deliberate indifference to a serious medical need. The additional claim against Solarino is Count II, a claim brought under the Fourth Amendment for conspiracy to violate the Fourth Amendment prohibition on excessive force. On each of these claims, the officers are entitled to qualified immunity.

#### 1.  Count I - Excessive Force

To prevail on a claim for excessive force, Plaintiff must prove that Defendants used force on Alvarado; that the use of force was unreasonable in light of the facts and circumstances at the time. Whether a particular use of force is reasonable is "judged from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And because officers are immune from suit under qualified immunity, plaintiffs have the burden of proving that the officers' fact-specific use of force violated clearly established law. *Mullenix v. Luna*, 577 U.S. 7, 13 (2015). In *Brosseau v. Haugen*, the Supreme Court reversed the Ninth Circuit for applying general Fourth Amendment principles to analyze qualified immunity in an excessive force case, reminding the Court of Appeals that an officer must have had fair notice that her conduct would violate the Constitution. 543 U.S. 194, 198-99 (2004).

Finally, to satisfy the particularity standard set forth in *Anderson v. Creighton*, Plaintiffs must be able to show clearly established law whose facts were sufficiently similar to Defendants' conduct to put the officers on notice that their use of force was unreasonable and would violate Plaintiff constitutional rights. 483 U.S. 635 (1987).

---

[4] Defendants will address three of the four claims in this section and address Briseno's claim in Count VIII separately *infra*.

Plaintiffs cannot make such a showing, and for that reason, Defendants are entitled to qualified immunity.

Plaintiff's Complaint relies heavily on a conclusion that officers were only pursuing Alvarado for a misdemeanor offense. First, this conclusion is as obvious as the complaint makes out. While, under the notice pleading standard, Plaintiff is entitled to have all alleged facts be taken as true and all reasonable inferences that may be drawn from the facts construed in Plaintiff's favor, and this Court need not give credence to conclusory statements of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). The Complaint alleges that because there were no reported injuries associated with the accident that Plaintiff caused and then fled from, police could only have been pursuing him for a misdemeanor. This, however, disregards the effect Plaintiff's flight would itself have on the formulation of reasonable suspicion. Any experienced officer (or, for that matter, layperson) would conclude that a person who flees from the scene of a vehicle accident does so for a reason, and several of those possible reasons may constitute felonies. For instance, in Arizona, driving under the influence with a suspended license constitutes a felony, as does driving under the influence with previous convictions for DUI, regardless of whether an accident occurs.[5] See A.R.S. §28-1383(A)(1) and (A)(2). Additionally, just because the victims of the accident reported no injuries at the scene did not necessarily mean that they were uninjured. It is not at all uncommon for people involved in a car accident to discover injuries, even serious injuries, in the days following the incident.

Plaintiff's Complaint also fails to consider the fluid nature of the incident. The Complaint asks that the officers' impressions be frozen in time at the moment they were informed that there were no injuries at the scene. But of course, it is apparent from the Complaint that the situation and, therefore, the officers' response to it evolved. For example, it is clear from the Complaint that Solarino did not strike Alvarado three times because he was investigating a misdemeanor. By that time, Alvarado had also attempted to

---

[5] Other possibilities, such as a suspect driving in a stolen car or a suspect who has a warrant out for his arrest might also prompt a person to flee the scene of an accident.

flee upon seeing Solarino enter the alleyway and was, apparently, engaged in an active struggle with Officer Solarino and a civilian.

The reasonableness of a use of force is always evaluated based on the totality of the circumstances. The excessive force inquiry turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. Other factors include the reasonableness of the officer's conduct leading to the use of force, the issuance of warnings, and whether less intrusive means is available. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018). However, the standard does not require that an officer exhibit perfect judgment or "resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010).

Analyzing the factors, the use of force here was reasonable. Alvarado was engaged in active flight from the police after a traffic accident involving other vehicles. According to the Complaint, the first officer on the scene, Solarino, recognized nearly immediately that Alvarado was under the influence of drugs, a fact that would affect the severity of the crime. Moreover, the Complaint alleges that Alvarado began to flee upon seeing Solarino's patrol car enter the alley. (Doc. 1, ¶ 82). Once Solarino attempted to seize Alvarado, it is clear from the Complaint, Alvarado tried to pull away, attempted to escape, and struggled with Solarino once on the ground. (Doc. 1, ¶ 87-91). Solarino utilized minimal force by seizing one of Alvarado's legs to prevent his escape over the alley wall and, subsequently, by striking Alvarado three times during the struggle on the ground.

Solarino was not able to secure Alvarado during the struggle on the ground, a circumstance that poses some level of threat to the officer. At that point, Solarino deployed his Taser and delivered two shocks to Alvarado. The use of the Taser in that circumstance reduces the overall amount of force ultimately required to subdue a suspect because it shortens the duration of the encounter.

According to the Complaint, Officer Yeandle used his body weight to hold Alvarado in place while handcuffing him. The Complaint alleges that Officer Ake placed his elbow on the back of Alvarado's neck while the handcuffs were applied and that he subsequently "shifted and placed his right knee on Alvarado's neck." (Doc. 1, ¶ 107). The Complaint alleges that Officer Gamez helped hold Alvarado while restraints were applied. Sergeant Ellis told other officers to place a spit sock over Alvarado.[6] Each of these actions were reasonable under the circumstances.

The use of the TARP restraints does not constitute excessive force when it is necessary to restrain a person who physically struggled with police. *Blankenhorn v. City of Orange*, 485 F.3d 463, 479 (9th Cir. 2007). Here, the Complaint notes that suspects under the influence of methamphetamine and/or cocaine often exhibit superhuman strength. (Doc. 1, ¶ 43). Given the difficulty officers had restraining Alvarado, it is reasonable that they would apply the TARP restraint to limit his ability to struggle further. A handcuffed subject struggling poses a threat not only to officers but also to himself.

The other officers listed – Gradias, Santa Maria, Durazo, Evans, Vance, and Durazo, are not alleged to have engaged in any use of force against Alvarado. To show liability under section 1983, a plaintiff must show that each defendant personally participated in the alleged deprivation of rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Ninth Circuit further defined individual liability in *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). In *Chuman*, the Court required the plaintiff to establish the officers' "integral participation" in the alleged constitutional violation. The *Chuman* court cautioned that a "team effort" standard is impermissible because it "allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Id.* at 293. Moreover, "allowing the jury to find individual officers liable when there is no evidence to link them to specific actions would have been erroneous as a matter of law." *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002). Because they are not

---

[6] This incident occurred March 22, 2020, early in the Covid pandemic at a time when no vaccines were available, and transmission of the virus was high.

integral participants, Plaintiff's Fourth Amendment claims against them should be dismissed.

### 2. Count II – Conspiracy to Commit Excessive Force

Plaintiff also brings a claim against Solarino for conspiracy to violate Alvarado's Fourth Amendment rights, alleging that Solarino conspired with civilian Canovali. To demonstrate a conspiracy to violate civil rights, a plaintiff must show an agreement between the defendants to deprive the plaintiff of constitutional right, an overt act in furtherance of the conspiracy, and a resulting deprivation of plaintiff's rights. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999). In a Complaint, a plaintiff must plead specific facts showing the existence of the alleged conspiracy. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004). Conclusory statements are insufficient.

It is clear from the Complaint that Solarino's objective was to prevent Alvarado's escape over the wall and that he utilized the assistance of a civilian to effect that objective. The Complaint does not plead sufficient facts that would render such an action a conspiracy to violate Alvarado's civil rights and Count II should be dismissed.

### 3. Count VI – Failure to Intervene

Under Ninth Circuit precedent, officers can be held liable for failing to intervene when they witness other officers violating an individual's constitutional rights. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). However, to be so liable, the officer must have had the opportunity to intervene. *Id.* Here, Plaintiff alleges that each of the officers had an opportunity to intervene "at various points throughout the approximately 20 minutes that Alvarado was restrained on the ground and before he stopped breathing." (Doc. 1, ¶ 230). Certainly, each of the defendant officers were present during that time period. But Plaintiff would need to demonstrate that, at the time of the incident, the law was clearly established that restraining a suspect in the recovery position pending medical assessment was a violation of Alvarado's constitutional rights. On the contrary, in *Tatum* the Ninth Circuit held that it was objectively reasonable for officers to place a suspect on his stomach for approximately 90 seconds before moving him to his

side and that the suspect was adequately monitored even though officers did not notice when he stopped breathing. *Id.* at 1097.

Given the state of the law, the officers are entitled to qualified immunity on Count VI.

### 4. Count VII – Substantive Due Process (Deliberate Indifference)

Plaintiff alleges a claim for substantive due process based on deliberate indifference to an objectively serious medical need. As discussed *supra,* the Ninth Circuit construes this as an excessive force claim, but the standard is the same as that applied to a pre-trial detainee under the Fourteenth Amendment.

The officers are entitled to qualified immunity. In *Tatum*, the Ninth Circuit held that officers' call for medical care, though they did not themselves provide any, was sufficient to overcome a claim for deliberate indifference. Here, paramedics were summoned, and officers reasonably relied on their assessment that Alvarado was stable. No clearly established law holds that officers were required to second-guess the paramedics' assessment or insist on another assessment when the paramedics were themselves still on the scene. The individual officers are entitled to qualified immunity.

### III. Plaintiff fails to state a claim in Counts V and VIII upon which relief may be granted.

Plaintiff also brings claims for discrimination (Count V) and for a substantive due process violation on behalf of Briseno herself (Count VIII). Neither state a claim upon which relief may be granted.

Count V alleges that the City of Tucson discriminated against Alvarado because of his disability, violating 42 U.S.C. § 12132 and 29 U.S.C. § 794. Plaintiff defined the disability as an "addiction to controlled substances." (Doc. 1, ¶ 215). This claim defies logic. Where officers' actions have been determined to have been objectively reasonable (as this Court should find here), the Court need not analyze the alleged ADA violation. *Bates ex rel. Johns v. Chesterfield Cnty., Va.*, 216 F.3d 367, 373 (4th Cir. 2000). The Tenth Circuit, deciding whether the recognize a claim for ADA violation based on an arrest,

1  surveyed the state of the law regarding such claims in *Gohier v. Enright*, 186 F.3d 1216
2  (10th Cir. 1999). There, the Court identified two types of ADA claims that some other
3  courts recognized: a claim for law enforcement conduct precipitated by mistaking the
4  effects of a disability for criminal conduct and the failure to accommodate a disability the
5  course of an arrest.

6  Here, the Complaint reveals that neither type of conduct occurred. First, there is no
7  indication that officers were aware of Alvarado's addiction. There is no allegation that they
8  were familiar with Alvarado prior to the date of the incident. Second, the way that officers
9  interacted with Alvarado was objectively reasonable. For these reasons, Defendants are
10 entitled to dismissal of Plaintiff's Count V.

11 With respect to Count VIII, Plaintiff alleges that the Ninth Circuit recognizes a
12 liberty interest in her relationship with decedent that may be vindicated through a § 1983
13 claim. The Ninth Circuit did recognize such an interest in *Smith v. City of Fontana*, 818
14 F.2d 1411 (9th Cir. 1987). However, subsequent to that decision, the Seventh Circuit
15 determined that there is no such interest absent a state action "aimed specifically at
16 interfering with the relationship." *Russ v. Watts*, 414 F.3d 783, 787 (7th Cir. 2005). In so
17 doing, the Seventh Circuit noted that most courts to have considered the issue, came to the
18 same conclusion. *Ibid.*

19 Even if Plaintiff could bring this Fourteenth Amendment claim on her own behalf,
20 the conduct at issue does not rise to the level of conscious shocking, and Plaintiff's claim
21 fails for that reason as well.[7]

22 Finally, if Plaintiff's substantive due process claim is allowed to go forward, then
23 decedent Alvarado's minor son is a necessary party to this action. As with Plaintiff's
24 wrongful death claim, it would be prejudicial to Defendants and, potentially, to the minor
25 child to adjudicate this matter without his participation. Defendants should not be left in a
26 position to wait for a future, identical claim to be brought by a minor (who may be entitled

---

[7] If this claim survives, it is also a claim available to Alvarado's minor child, making him a necessary party.

to a tolling period, due to his age, which would allow him to bring a claim far in the future). But also, the minor's rights may be affected if there is a judgment on the merits that has the effect of *res judicata*.

## IV. Plaintiff's Complaint does not allege the gross negligence required to state a claim for wrongful death under Arizona law.

"Under Arizona law, the standard for gross negligence requires a showing of "[g]ross, willful, or wanton conduct." *Armenta v. City of Casa Grande*, 205 Ariz. 367 (Ct. App. 2003). For the same reasons that Plaintiff cannot demonstrate deliberate indifference, the Complaint fails to state a claim for gross negligence. Therefore, Defendants are entitled to judgment on Plaintiff's wrongful death claim.

## V. Plaintiff's Complaint does not allege conduct that would support a claim for punitive damages.

To state a claim for punitive damages, a plaintiff must demonstrate conduct that was malicious, wanton, or oppressive. *Dang v. Cross*, 422 F.3d 800, 808–09 (9th Cir. 2005). Here, the Complaint makes clear that officers called for medical assistance, that paramedics assessed Alvarado and determined he was stable, that Gamez instructed officers to move Alvarado to the recovery position as soon as possible, and that officers continued to stay with Alvarado after the paramedic assessment. That officers did not realize Alvarado stopped breathing is, at most, a kind of negligence. A mistake of the type that does not give rise to liability, much less punitive damages.

Addressing Plaintiff's claim for punitive damages at this early juncture is appropriate where the Complaint fails to make a case for malicious or wanton conduct and Defendants are entitled to qualified immunity. Claims for punitive damages may operate to make the discovery process lengthier and more intrusive, precisely what qualified immunity is designed to prevent. Numerous district courts have applied an elevated standard in § 1983 cases for the discovery of financial information based on a claim for punitive damages due to the operation of qualified immunity. (See, *e.g. E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009). Qualified

immunity is designed to balance accountability of public officials with "the need to shield public officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Dismissing the claim for punitive damages now simplifies the discovery process should any of Plaintiff's other claims survive.

### VI. The City of Tucson is entitled to sovereign immunity and to judgment on Plaintiff's state law wrongful death claim.

Where, as here, there is no underlying Constitutional violation or gross negligence by the individual defendants, there can be no liability for the City. Even where a plaintiff raises the specter of a policy, pattern, or practice that constituted the moving force behind the violation, a deprivation of rights must still be established for municipal liability.

### VII. Conclusion

The individual police officer and paramedic defendants are entitled to summary judgment on Plaintiff's § 1983 claims. The City of Tucson is entitled to judgment on Plaintiff's *Monell* claims because of the lack of underlying constitutional violation. Both the individuals and the City are entitled to judgment on Plaintiff's claim for wrongful death because the Complaint does not allege facts sufficient to demonstrate gross negligence. And finally, the City is entitled to judgment on Plaintiff's ADA claim because their conduct was objectively reasonable and because officers were unaware of Alvarado's history of addiction.

////
////
////
////
////
////
////
////

**LRCiv 12.1(c) Certification**

On August 12, 2022, the parties conferred regarding the arguments set forth in this Motion to Dismiss. Despite the conferral, the parties were unable to agree that the Complaint was curable by amendment.

DATED: August 12, 2022.

                                      MICHAEL G. RANKIN
                                      City Attorney

                                By    s/ Renee J. Waters
                                        Renee J. Waters
                                        Principal Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul Gattone
Law Office of Paul Gattone
301 South Convent
Tucson, Arizona 85701
gattonecivilrightslaw@gmail.com
    *Attorney for Plaintiff*

By E. Acosta/rdv