Renee J. Waters
Principal Assistant City Attorney for
Michael G. Rankin
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ  85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Renee.Waters@tucsonaz.gov
State Bar No. 031691

*Attorneys for Defendants City of Tucson, Nicolo Solarino, Francisco Santa Maria, Marco Durazo, Sean Yeandle, Henry Gamez, Donovan Vance, Ryan Ake, Joseph Gradias, Eric Evans, Scott Ellis, Raymond Fleck, Silas Spencer, Keith Goldstein (hereafter "City Defendants")*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Briseno, on her own behalf and as the personal representative of the estate of Damian Eryko Alvarado,<br><br>Plaintiff,<br><br>vs.<br><br>City of Tucson; Nicolo Solarino (Tucson Police); Francisco Santa Maria (Tucson Police); Marco Durazo (Tucson Police); Sean Yeandle (Tucson Police); Henry Gamez (Tucson Police); Donovan Vance (Tucson Police); R. Ake (Tucson Police); Joseph Gradias (Tucson Police); Eric Evans (Tucson Police); Scott Ellis (Tucson Police); Raymond Flex (Tucson Fire); Silas Spencer (Tucson Fire); Keith Goldstein (Tucson Fire); and Justin Canovali (private citizen), all in their individual capacities,<br><br>Defendants. | No. 4:22-cv-00132<br><br>**CITY DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>(Assigned to Hon. Raner C. Collins) |

Defendants City of Tucson, Nicolo Solarino, Francisco Santa Maria, Marco Durazo, Sean Yeandle, Henry Gamez, Donovan Vance, Ryan Ake, Joseph Gradias, Eric Evans, Scott Ellis, Raymond Fleck, Silas Spencer, and Keith Goldstein (hereafter "City Defendants"), herein answer Plaintiff's Complaint filed on March 18, 2022 (Doc. 1) as follows:

1

1. Deny.

## JURISDICTION AND VENUE

2. Admit.

3. Admit.

4. Admit.

## PARTIES

<u>Plaintiff</u>

5. City Defendants lack sufficient information to admit or deny and, therefore, deny.

6. City Defendants lack sufficient information to admit or deny and, therefore, deny.

7. Admit

8. Admit.

<u>Tucson Police Department Defendants</u>

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.
24. Admit.
25. Admit.
26. Admit.
27. Admit.
28. Admit.
29. Admit.
30. Admit.
31. Admit.
32. Admit.
33. Admit.
34. Admit.
35. Admit.
36. Admit.
37. Admit.

## FACTUAL ALLEGATIONS

<u>Tucson Police Department History of In-Custody Deaths and Taser Deaths</u>

38. Admit that during the noted time period there were three incidents where a suspect was placed into restraints by TPD officers, subsequently stopped breathing, and ultimately died.

39. Admit.

40. City Defendants lack sufficient information to admit or deny and, therefore, deny that Mr. Carbone's cause of death was cardiac arrest. City Defendants admit that Mr. Carbone was Tased during an encounter with TPD officers and handcuffed. City Defendants further admit that Mr. Carbone stopped breathing after the arrival of paramedics on the scene.

41. Admit.

42. City Defendants lack sufficient information to admit or deny and, therefore, deny the factual allegations related to the timing of the three individuals' drug consumption. City Defendants specifically deny that TPD officers had knowledge of what specific drug the individuals ingested prior to their encounters with TPD officers. City Defendants admit the remaining allegations in Paragraph 42.

43. City Defendants admit that, prior to March 2020, most police officers with adequate training and experience recognized the signs and outward manifestations of a suspect who was under the influence of drugs. City Defendants further admit that, prior to March 2020, TPD officers were generally aware and trained regarding the phenomenon sometimes referred to as "positional asphyxiation" or "excited delirium."

44. Admit.

45. Admit.

46. City Defendants admit that there were three incidents in which an individual who was Tased subsequently died.

47. Admit.

48. Admit.

49. Admit that Mr. Carbone was Tased during an encounter with TPD officers and that he subsequently died.

50. Admit that Tasers are utilized as a non-lethal force option. City Defendants further admit that the Taser statistics included in Paragraph 50 are accurately represented. City Defendants deny the characterization that the use of Taser is "linked to hundreds…of deaths."

51. City Defendants lack sufficient information to admit or deny and, therefore, deny.

<u>Alvarado is Involved in a Traffic Accident</u>

52. Admit.

53. Admit that Alvarado exited his vehicle after the accident but deny that he checked anyone's wellbeing.

| | | |
|---|---|---|
| 1 | 54. | Admit. |
| 2 | 55. | Admit. |
| 3 | 56. | Deny. |
| 4 | 57. | Admit. |
| 5 | 58. | Admit. |
| 6 | 59. | Admit. |
| 7 | 60. | Admit. |
| 8 | 61. | Admit. |
| 9 | 62. | Deny. |
| 10 | 63. | With the exception of a Community Services officer who also responded, admit. |
| 12 | 64. | Admit. |
| 13 | 65. | Admit. |
| 14 | 66. | Deny. |
| 15 | 67. | City Defendants make no answer to the legal conclusion contained in Paragraph 67 but note that injuries from car accidents are not always apparent in the moments immediately following a crash and further note that Alvarado matched the description of a suspect involved in a shooting shortly before the crash and in the same general area. City Defendants further note that a witness estimated Alvarado's speed before the crash in the 80 mile per hour range. |
| 21 | 68. | Admit. |
| 22 | 69. | Deny. |
| 23 | 70. | Deny. |
| 24 | 71. | Admit that officers had only reasonable suspicion at that juncture. |
| 25 | 72. | Admit that officers had only reasonable suspicion at that juncture. |

<u>Initial Encounter Between Alvarado and Police</u>

|  | | |
|---|---|---|
| 27 | 73. | Admit. |

74. City Defendants lack sufficient information to admit or deny and, therefore, deny.

75. City Defendants lack sufficient information to admit or deny and, therefore, deny.

76. City Defendants lack sufficient information to admit or deny and, therefore, deny.

77. City Defendants lack sufficient information to admit or deny and, therefore, deny.

78. City Defendants lack sufficient information to admit or deny and, therefore, deny.

79. City Defendants lack sufficient information to admit or deny and, therefore, deny.

80. City Defendants lack sufficient information to admit or deny and, therefore, deny.

81. Admit.

82. Admit.

83. City Defendants lack sufficient information to admit or deny and, therefore, deny.

84. Admit.

85. Admit.

86. Admit that Officer Solarino did not instruct the civilians who had ahold of Alvarado's to release him and allow him to flee over the block wall. Further admit that Solarino utilized the civilians' assistance in pulling Alvarado from atop the wall.

87. Admit.

88. Deny.

89. Admit that Officer Solarino punched Alvarado "a couple of times."

90. Admit that it appears from body worn camera footage that Alvarado did not punch the civilians nor Officer Solarino; City Defendants note that Alvarado struggled against their efforts to take him into custody.

91. Admit that the civilian continued to assist Officer Solarino, who was attempting to take Alvarado to the ground to secure him.

92. Admit.

93. Admit that Officer Solarino readied his Taser at around the same time the civilian flung Alvarado or was flung by him during their struggle.

94. Admit.

95. Admit.

96. Admit.

97. Admit.

98. Admit that Alvarado was partially on the ground. City Defendants note that Alvarado was consistently wrestling, writhing, bucking, and attempting to raise himself into a standing position.

99. City Defendants lack sufficient information to admit or deny and, therefore, deny.   100.   Deny.

### Alvarado is Pinned to the Ground and Suffocated

101. Admit.

102. Admit.

103. Admit.

104. Admit that officers were able to secure Alvarado in handcuffs but deny that Alvarado was secured within one minute and thirty seconds of the Taser deployment; it was more than two minutes before officers were able to secure the handcuffs.

105. Admit that officers recognized Alvarado was struggling with a high degree of strength and that, once Alvarado was secured in handcuffs, officers recognized the need to move Alvarado into the recovery position based on the likelihood that he was under the influence of drugs.

7

106. Admit.

107. Deny. Defendant Ake placed his elbow and/or hand, at various moments, on the back of Alvarado's head and placed his knee on Alvarado's shoulder blades.

108. Deny; Ake placed his knee on Alvarado's shoulders blades.

109. Deny.

110. Admit.

111. Deny; Alvarado made noises and statements, but they did not sound like signs of "medical distress."

112. City Defendants admit that more than three minutes after Alvarado was secured on his stomach, he said he could not breathe.

113. Admit.

114. Admit.

115. Admit that, at the time Alvarado made the statement, officers in the process of obtaining and using a TARP restraint to secure Alvarado and that they continued that process.

116. Admit.

117. Admit and further note that at least one officer verbally agreed.

118. Admit that officers continued to apply the TARP and then immediately moved Alvarado onto his side.

119. Admit but note that the first TARP restraint was much looser than that depicted in the diagram. Alvarado's shoulders were not pulled back, and the restraint was loose enough for him to fully extend his legs.

120. Admit.

121. Admit and note that in-between, Alvarado also said, "Get away," and "I don't like this." During the same time period, officers also summoned paramedics to the scene.

122. Admit.

123. Deny. The decision to apply a second TARP occurred much later in the encounter, was temporally related to Alvarado's impending transport, and was necessary because the first restraint was applied too loosely as a stop-gap measure. Additionally, it was not Officer Solarino who first articulated the suggestion.

124. Deny that it was Yeandle who agreed.

125. Deny that Alvarado was in medical distress or that there were clear signs of the same. In fact, Alvarado continued to physically struggle against the application of the second TARP.

126. Deny that paramedics were refused access.

127. Deny.

128. Admit that *when* Alvarado said he could not breathe, Defendants responded as alleged.

129. Deny the characterization but admit that Gradias was nearby.

130. Admit that Santa Maria, Durazo, and Ellis were on scene at the time the second TARP was applied.

131. Admit.

132. Admit that Alvarado was temporarily on his stomach in conjunction with the application of the second TARP.

133. Admit.

134. Deny.

135. Admit that a spit sock was requested to be placed on Alvarado.

136. Admit that a spit sock is a mesh cloth designed to prevent spitting and biting; during the Covid pandemic, the spit sock was also utilized to limit officers' and paramedics' exposure to viral particles. City Defendants note that the first "spit sock" placed on Alvarado was of a different design than the diagram; it did not fully cover his head.

137. Admit that the spit mask was placed on Alvarado's face.

138. Admit that there were two sergeants present.

<u>Alvarado Dies</u>

139. Admit that paramedics accessed Alvarado immediately after the spit mask was placed.

140. Deny that TFD personnel could not see Alvarado's eyes or facial expressions.

141. Admit that an officer remained with Alvarado during the medical evaluation, generally holding his head in place to prevent him from thrashing and injuring himself.

142. Admit that TFD personnel evaluated Alvarado; deny that he made noises indicating medical distress.

143. Admit that Silas placed a traditional mesh hood over Alvarado's head before paramedics began their evaluation.

144. Admit.

145. Deny.

146. Admit that TFD personnel did not immediately leave the scene after their evaluation.

147. Deny. Alvarado could be heard moaning and breathing for most of the identified time period; he could also be seen to be breathing by the rise and fall of his shoulder.

148. Deny that Vance and Durazo noticed a problem with Alvarado and failed to alert the paramedics.

149. Admit that there was a period of time when no one checked for a pulse; during most of that time, Alvarado could be heard and seen to be breathing.

150. Deny.

151. Admit that Evans and Santa Maria were nearby but deny the characterizations contained within the remainder of Paragraph 151.

152. Deny.

153. Admit that Ellis was nearby but deny the remaining characterizations of Paragraph 153.

154. Admit that officers remained nearby but deny the remaining characterizations of Paragraph 154.

155. Admit that as soon as an officer noticed a problem with Alvarado, he asked whether Alvarado was breathing, and Officer Durazo immediately checked for a pulse.

156. Admit that Alvarado had no pulse and was no longer breathing.

157. Admit that Alvarado was transported to Banner UMC and pronounced dead.

## COUNT I

### 42 U.S.C. § 1983 -Fourth Amendment

### Unreasonable Seizure (Excessive Force)

### Against Solarino, Ake, Gamez, Gradias, Yeandle, and Ellis

158. City Defendants re-allege and incorporate by reference their answers to Paragraphs 1-157 as though fully re-stated herein.

159. Deny.

160. Deny.

161. Deny.

162. Deny that the application of a TARP restraint constitutes excessive force.

163. Deny.

164. Deny.

165. Deny.

166. Deny.

    a.    Deny.

    b.    Deny.

    c.    Deny.

    d.    Deny.

## COUNT II

### 42 U.S.C. § 1983 - Conspiracy

### Violation of Fourth Amendment (Excessive Force)

### Against Solarino and Canovali

167. Count II has been dismissed and does not require an Answer.

168. Count II has been dismissed and does not require an Answer.

169. Count II has been dismissed and does not require an Answer.

170. Count II has been dismissed and does not require an Answer.

171. Count II has been dismissed and does not require an Answer.

172. Count II has been dismissed and does not require an Answer.

173. Count II has been dismissed and does not require an Answer.

174. Count II has been dismissed and does not require an Answer.

175. Count II has been dismissed and does not require an Answer.

176. Count II has been dismissed and does not require an Answer.

177. Count II has been dismissed and does not require an Answer.

178. Count II has been dismissed and does not require an Answer.

179. Count II has been dismissed and does not require an Answer.

## COUNT III

## 42 U.S.C. § 1983 - *Monell*

**Unconstitutional Policy/Custom in Violation of the Fourth & Fourteenth Amendment Against City of Tucson**

180. City Defendants re-allege and incorporate by reference their answers to Paragraphs 1-179 as though fully re-stated herein.

181. Deny that the City of Tucson's policies, practices, or procedures "caused" Alvarado's death; City Defendants further deny that any City of Tucson Defendant violated Alvarado's constitutional rights.

    a.    Admit spit socks were permissible under certain conditions.

    b.    Admit the use of TARP restraints was permissible under certain conditions.

    c.    Admit the use of a Taser was permitted under certain conditions.

    d.    Admit that officers were permitted to use their body weight, generally, to gain control over struggling suspects during a custodial arrest/investigation.

    e. Deny that any Defendant kneeled on Alvarado's neck.

    f. Deny the characterization that officers delayed Alvarado's medical treatment when he was "visibly in medical distress." Further deny that the City of Tucson has a practice or custom of denying or unreasonably delaying medical treatment to persons in custody.

  182. Deny that TPD command knew of heightened risks associated with the use of any device or practice and disregarded those risks.

  183. Admit that the City had a policy in place permitting the use of TARP restraints in certain situations and note that TPD officers are trained in its safe usage.

  184. Deny.

    a. Deny.

    b. Deny.

    c. Deny.

  185. City Defendants are uncertain what Plaintiff means by "linked to;" therefore, Defendants deny.

  186. Deny.

    a. Deny.

    b. Deny.

    c. Deny.

  187. Deny.

    a. Deny.

    b. Deny.

    c. Deny.

  188. Deny.

  189. Defendant, City of Tucson, is entitled to sovereign immunity but is not, of course, an individual employee entitled to qualified immunity.

  190. Deny.

    a. Deny.

|   |   |       |
|---|---|-------|
| 1 | b. | Deny. |
| 2 | c. | Deny. |

## COUNT IV

### 42 U.S.C. § 1983 - *Monell & City of Canton*

### Failure to Train

### Against City of Tucson

191. City Defendants re-allege and incorporate by reference their answers to Paragraphs 1-190 as though fully re-stated herein.

192. City Defendants deny the characterization but admit that TPD command staff are aware that certain suspects are at a heightened risk of breathing and/or cardiac problems when restrained, which is why TPD officers are trained to move such individuals into the recovery position as soon as practicable.

193. City Defendants deny the characterization but admit that TPD command staff are aware that certain suspects are at a heightened risk of breathing and/or cardiac problems when restrained, which is why TPD officers are trained to move such individuals into the recovery position as soon as practicable.

194. Deny.

195. Deny.

196. Deny that TPD's training taught officers to be deliberately indifferent to objective signs of distress in detainees.

197. Deny but also note that TPD provided training.

198. City Defendants lack sufficient information to admit or deny and, therefore, deny.

199. City Defendants are unsure what Plaintiff intends to allege in Paragraph 199 or what the relevant dates of comparison might be for the "surging methamphetamine usage." To the extent Plaintiff alleges that methamphetamine was and had been a fairly common street drug by March, 2020, City Defendants admit.

200. Deny.

201. Deny.

202. Deny.

203. Deny.

204. Deny.

205. Deny.

206. Deny.

207. Deny.

## COUNT V

## 42 U.S.C. § 12132 (ADA) and 29 U.S.C. § 794 (Section 504)

## Discrimination on the Basis of Disability

## Against City of Tucson

208. Count V has been dismissed and does not require an Answer.

209. Count V has been dismissed and does not require an Answer.

210. Count V has been dismissed and does not require an Answer.

211. Count V has been dismissed and does not require an Answer.

212. Count V has been dismissed and does not require an Answer.

213. Count V has been dismissed and does not require an Answer.

214. Count V has been dismissed and does not require an Answer.

215. Count V has been dismissed and does not require an Answer.

216. Count V has been dismissed and does not require an Answer.

217. Count V has been dismissed and does not require an Answer.

218. Count V has been dismissed and does not require an Answer.

219. Count V has been dismissed and does not require an Answer.

220. Count V has been dismissed and does not require an Answer.

221. Count V has been dismissed and does not require an Answer.

222. Count V has been dismissed and does not require an Answer.

223. Count V has been dismissed and does not require an Answer.

224. Count V has been dismissed and does not require an Answer.

| | | |
|---|---|---|
| 1 | 225. | Count V has been dismissed and does not require an Answer. |
| 2 | 226. | Count V has been dismissed and does not require an Answer. |
| 3 | 227. | Count V has been dismissed and does not require an Answer. |
| 4 | 228. | Count V has been dismissed and does not require an Answer. |

**COUNT VI**

**42 U.S.C. § 1983 - Fourteenth Amendment Due Process Clause**

**Failure to Intervene/Intercede**

**Against All Individual Police Defendants**

229. Count VI has been dismissed and does not require an Answer.
230. Count VI has been dismissed and does not require an Answer.
231. Count VI has been dismissed and does not require an Answer.
232. Count VI has been dismissed and does not require an Answer.
233. Count VI has been dismissed and does not require an Answer.
234. Count VI has been dismissed and does not require an Answer.
235. Count VI has been dismissed and does not require an Answer.
236. Count VI has been dismissed and does not require an Answer.
237. Count VI has been dismissed and does not require an Answer.
238. Count VI has been dismissed and does not require an Answer.

**COUNT VII**

**42 U.S.C. § 1983 - Fourteenth Amendment Due Process Clause**

**Deliberate Indifference to a Substantial Risk of Serious Harm &**

**Deliberate Indifference to a Serious Medical Need**

**Against all Individual Police Defendants[1] and Individual Fire Defendants**

239. City Defendants re-allege and incorporate by reference their answers to Paragraphs 1-238 as though fully re-stated herein.

240. Admit.

---

[1] The individual police officer defendants have been dismissed from Count VIII. The individually named Tucson Fire Department personnel Answer Court VIII.

16

241. Admit that Alvarado had a right to be free from conditions and conduct that evinced a deliberate indifference to an objectively serious medical need.

242. Deny.

    a. Deny.

    b. Deny.

243. City Defendants make no answer to the legal conclusions contained in Paragraph 243; City Defendants specifically deny that any Defendant was deliberately indifferent to any apparent medical need.

244. Deny.

245. Deny. City Defendants note that the TFD personnel's decisions and recommendations were based on their medical assessment of Alvarado and were objectively reasonable.

246. Deny that any City Defendant had knowledge of a medical need and deliberately disregarded it.

247. Deny.

248. Deny.

249. Deny.

    a. Deny.

    b. Deny.

    c. Deny.

    d. Deny.

## COUNT VIII

**42 U.S.C. § 1983 - Fourteenth Amendment Due Process Clause**

**Substantive Due Process: Liberty Interest in Familial Association**

**Against all Individual Police Defendants**

250. Count VIII has been dismissed and does not require an Answer.

251. Count VIII has been dismissed and does not require an Answer.

252. Count VIII has been dismissed and does not require an Answer.

253. Count VIII has been dismissed and does not require an Answer.
254. Count VIII has been dismissed and does not require an Answer.
255. Count VIII has been dismissed and does not require an Answer.
256. Count VIII has been dismissed and does not require an Answer.
257. Count VIII has been dismissed and does not require an Answer.
258. Count VIII has been dismissed and does not require an Answer.
259. Count VIII has been dismissed and does not require an Answer.

## COUNT IX

### A.R.S. §§ 12-611

### Gross Negligence Causing Wrongful Death

### Against all Individual Police Defendants & Individual Fire Defendants

260. Count IX has been dismissed and does not require an Answer.
261. Count IX has been dismissed and does not require an Answer.
262. Count IX has been dismissed and does not require an Answer.
263. Count IX has been dismissed and does not require an Answer.
264. Count IX has been dismissed and does not require an Answer.

## PRAYER FOR RELIEF

A. City Defendants deny that Plaintiff is entitled to relief.
B. City Defendants deny that Plaintiff is entitled to relief.
C. City Defendants deny that Plaintiff is entitled to relief.
D. City Defendants deny that Plaintiff is entitled to relief.
E. City Defendants deny that Plaintiff is entitled to relief.
F. City Defendants deny that Plaintiff is entitled to relief.
G. City Defendants deny that Plaintiff is entitled to relief.

## GENERAL DENIAL

Any allegation not specifically admitted is denied.

**AFFIRMATIVE DEFENSES**

City Defendants also assert the following affirmative defenses:

1. The City of Tucson is entitled to qualified immunity.

2. The individual City of Tucson Defendants are entitled to qualified immunity.

3. The Complaint fails to state a claim upon which relief may be granted.

DATED: March 16, 2023.

                MICHAEL G. RANKIN
                City Attorney

                By   /s/ Renee J. Waters
                       Renee J. Waters
                       Principal Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul Gattone
Law Office of Paul Gattone
301 South Convent
Tucson, Arizona 85701
gattonecivilrightslaw@gmail.com
    *Attorney for Plaintiff*

By E. Acosta