Michelle R. Saavedra
Tiffiney D. Franks
Principal Assistant City Attorneys for
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ 85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Tiffiney.Franks@tucsonaz.gov
State Bar No. 40313
*Attorneys for Defendants Nicolo Solarino, Sean Yeandle, Henry Gamez, Ryan Ake, and Joseph Gradias, (hereafter "Defendants")*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Briseno, on her own behalf and as the personal representative of the estate of Damian Eryko Alvarado,<br><br>Plaintiff,<br><br>vs.<br><br>Nicolo Solarino (Tucson Police); Francisco Santa Maria (Tucson Police); Marco Durazo (Tucson Police); Sean Yeandle (Tucson Police); Henry Gamez (Tucson Police); Ryan Ake (Tucson Police); Joseph Gradias (Tucson Police); and Justin Canovali (private citizen), all in their individual capacities,<br><br>Defendants. | No. 4:22-cv-00132-RCC<br><br><br>**PROPOSED JOINT PRETRIAL ORDER**<br><br><br>(Assigned to Hon. Raner C. Collins) |

Pursuant to the Court's Scheduling Order dated April 14, 2023 (Doc. 64), and the Court's Order dated May 12, 2025 (Doc. 138), the parties hereby submit the following Proposed Joint Pretrial Order, which reflects the agreements of the parties and shall, upon approval of the Court, be incorporated into the Final Pretrial Order.

### I.    IDENTIFICATION OF PARTIES AND COUNSEL

Paul Gattone
Law Office of Paul Gattone
301 South Convent
Tucson, Arizona 85701

1

gattonecivilrightslaw@gmail.com
Attorney for Plaintiff

Michelle R. Saavedra
Tiffiney D. Franks
Principal Assistant City Attorneys for
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ 85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Michelle.Saavedra@tucsonaz.gov
Tiffiney.Franks@tucsonaz.gov
Attorneys for Defendants

## II.    NATURE OF ACTION

**Provide a concise statement of the type of case, including the cause of action and the relief sought.**

Plaintiff brings this suit on behalf of the estate of Damien Alvarado, under 42 U.S.C. § 1983, alleging the use of excessive force in violation of Damien Alvarado's Fourth Amendment rights against Defendant Tucson Police Department ("TPD") officers Nicolo Solarino, Sean Yeandle, Henry Gamez, Ryan Ake, and Joseph Gradias (hereafter "Defendants"). Plaintiff seeks compensatory and punitive damages.

## III.    STATEMENT OF JURISDICTION

**State the claims and cite the statutes which gives this Court jurisdiction over each claim.**

Plaintiff's claims are for alleged violations of Damien Alvarado's Fourth Amendment rights under 42 U.S.C. § 1983, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## IV.    CONTENTIONS OF THE PARTIES

**With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal or a presumption where the burden of proof has shifted, the party having the burden of proof shall list the**

**elements or standards that must be proven in order for the party to prevail on that claim or defense.**

Plaintiff has the burden of proving that the acts of the defendants deprived Damien Alvarado of his Fourth Amendment rights and that deprivation was the cause of his death. Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove the Defendants deprived Damien Alvarado of this Fourth Amendment right, the plaintiff must prove the use of force the officers used was unreasonable or excessive.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. The reasonableness of a particular use of force must be determined from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. The officers' subjective intent or motive is not relevant.

## V.     STIPULATIONS AND UNCONTESTED FACTS

**Identify any stipulations reached between the parties and any facts that are uncontested.**

1. Defendants were acting within the scope of their employment as TPD police officers when the subject encounter occurred.

2. Around the same time as a car collision involving Damien Alvarado, a shooting took place approximately one mile away from the scene of the car collision. This shooting turned out to be a homicide, as the shooting victim died of his wounds.

3. Prior to having contact with Damien Alvarado, Solarino knew about the shooting/homicide incident and that the potentially armed suspect from that nearby incident fled.

4. When Solarino contacts Alvarado he gives multiple commands, and Alvarado is not complying. Instead, Alvarado continues to resist and struggle with Solarino.

5. Solarino's Body Worn Camera ("BWC") is turned off because the mechanism that activates it, and turns it off, was broken.

6. Solarino punched Alvarado multiple times in the face during the struggle to get him under control and detained.

7. Solarino punched Alvarado because he was trying to get him to comply. This was prior to the use of the taser and after Alvarado was taken down from the wall.

8. Solarino used his Taser after Alvarado was taken off the wall.

9. Solarino used his Taser because the level of force used had not been effective, and the Taser was also not effective.

10. Before the first TARP device was applied, Alvarado was "essentially kicking his feet, making statements to the effect he's going to fight officers, still flailing his body around, things of that nature, all of which is conflicting with our goal…which is to detain him and move on with the investigation."

11. A TARP is "a nylon strap with a carabiner at one end and then a loop with kind of a tension device at the other," or a restraint used "to secure the person's ankles to their hands so that they can't, you know, extend their legs."

12. A TARP is used when there is "[e]ither a specific threat of kicking or a high level of resistance or a likelihood of fleeing."

13. The TARP was applied after Alvarado was in handcuffs "[b]ecause he was still actively kicking and things of that sort, so we wanted to make sure he was secured before we had med come in and check him out."

14. A second TARP was properly applied to reduce full range of motion and keep it secured to prevent escape.

15. More than ten minutes into Yeandle's body-worn camera footage, Alvarado was doing things described as "flailing about, moving his body, articulating things [to officers] what he specifically wanted, [and] telling [officers] no."

16. Ake applied the first spit sock.

17. Yeandle was enroute to the scene of the shooting when the call about the collision came in and then the information about Solarino being in contact and fighting with the person who fled the collision.

18. Yeandle never made it to the scene of the collision because Solarino had located the suspect who fled from the collision and was engaged in a fight with him in the alley in the area, and Yeandle responded to assist.

19. Ake was originally responding to the shooting call and was diverted to the call involving a car accident.

20. Ake did not make it to the car accident scene because he responded directly to assist Solarino.

21. Ake had information that the person Solarino was struggling with was the same person who fled from the car accident and information that the car crash was "potentially linked" to the shooting incident.

22. Ake switched to respond to the car crash scene "thinking it was related to the shooting," and he believed Alvarado was the shooting suspect and the hit and run suspect.

23. When Yeandle arrives, he sees Solarino physically fighting with a suspect or "facing each other and struggling face to face," and Yeandle attempts to help or assist Solarino with trying to gain control of Alvarado.

24. When Ake got to the scene, he could see Solarino "squared up" with Alvarado, they were still standing, and he could see the two civilians nearby, and Yeandle was just a few steps in front of Ake also responding to assist.

25. At one point Ake's forearm, or elbow, is on Alvarado's back or upper shoulder and later he is applying his hands to the back of Alvarado's head.

26. When Gamez heard on the radio that officers were struggling with the suspect who fled the collision, and he realized he was close to them, he ran over to the area to assist.

27. Gamez could not locate them at first but when he did, he could see officers Solarino, Yeandle, and Ake still struggling with Alvarado.

28. Gradias remembers a call relating to a shooting, or homicide, wherein the suspect described to be a Hispanic male had fled, and when he responded to assist, he believed that the homicide call and car crash could be related.

29. There were four officers dealing with Alvarado when Gradias got to the scene, and he assisted post-handcuffing by grabbing Alvarado's arm when the first TARP was applied.

30. All Defendants received training relating to positional asphyxiation, excited delirium, and the recovery position, which is putting a person on their side to recover and breathe easier.

31. TFD evaluated Alvarado after the Defendants use of force, and when TFD asked him if he was injured, he said "no."

32. Per Dr. Joshua Gaither, TFD "[p]aramedics quickly assessed Mr. Alvarado and obtained a set of vital signs from him, including his respiratory rate, blood pressure, heart rate, and pulse oxygen level. Both Mr. Alvarado's blood pressure and pulse oxygen levels were within the expected norm. Mr. Alvarado's respiratory rate and heart rate were both slightly elevated, and the paramedics reasonably concluded that the slight elevations were consistent with someone who had been physically exerting himself."

33. Alvarado had a medical history of methamphetamine use.

34. Alvarado had a past medical history of a heart murmur.

35. Alvarado died on the day in question.

36. Alvarado was not the shooter in the nearby homicide and a different individual was convicted of that offense in Pima County Superior Court.

## VI.    CONTESTED ISSUES OF FACT

**List issues of fact to be tried and determined upon trial. Each issue of fact must be stated separately and in specific terms, followed by the parties' contentions as to each issue.**

1. Issue: Whether Solarino's punches and the use of his taser before other officers arrived were objectively reasonable, and therefore not a basis for Plaintiff's Fourth Amendment excessive force claim under 42 U.S.C. § 1983.

   a. Plaintiff contends:

   b. Defendants contend: The Court already granted summary judgment in Solarino's favor for his use of punches and his taser. (Doc. 131 at 46:10-11.) As such, this use of force cannot form the basis for a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, and Plaintiff cannot argue or insinuate that it was unreasonable, unjustified, or not necessary at trial.

2. Issue: What level of force did each named Defendant use during this encounter, and what was the duration of the force used?

   a. Plaintiff contends: That the force used by Defendants against Mr. Alvarado (Alvarado) was excessive and unreasonable. At one point in the interaction there was 5-7 officers pressing their body weight on top of Alvarado. This was more force than was necessary and this force continued even after Alvarado was handcuffed and the TARP had been applied. Alvarado was held in the stomach down (i.e., prone) position for a total of approximately 2 minutes and 53 seconds after he was handcuffed. Most of that time was spent face-down with Defendants' bodyweight on top of him. During the time that he had the force of Defendants on him Alvarado stated on at least six occasions that he could not breathe.

   b. Defendants contend: Plaintiff's version is that some officers used a greater level of force and for a lengthier amount of time than what will be established at trial. For example, Plaintiff alleges that Yeandle put his knee on Alvarado's windpipe and Yeandle denies that accusation. Plaintiff has argued that Defendants "dogpiled" Alvarado and Defendants deny this accusation. Plaintiff has also argued that the force used in this case

"consists of 'squeezing the breath' from a suspect" and Defendants deny this accusation. Each named Defendant will testify about their specific use of force during the trial. The greatest level of force used was the officers' own strength. At times some officers partly used their body weight to try and control Alvarado who was aggressively resisting, but none of the Defendants put their knees on Alvarado's neck. None of the officers used a baton, closed fist strikes to his person, or their tasers during the period of time still at issue[1]. The evidence at trial will be that the use of a spit sock does not impede a person's ability to breathe.

3. Issue: The nature of the crime or other circumstances known to the Defendants at the time force was applied.

   a. Plaintiff contends: That while some of the individual Defendants may have had suspicion that Alvarado was involved in the shooting incident, at least some of them arrived at the belief that he was not the shooting suspect while Alvarado was still on the ground and in the prone position. At this point the only crime that Alvarado might have committed was leaving the scene of an accident, a misdemeanor.

   b. Defendants contend: Alvarado was seen fleeing from a serious multi-vehicle crash. Civilians who witnessed the crash called 911 to report they had caught up with him in a church parking lot nearby. Meanwhile, several of the Defendants had been responding to a nearby shooting/homicide incident where the potentially armed suspect fled the scene and they believed that the car crash could be related, and that Alvarado could be the suspect for both incidents.

4. Issue: Whether Alvarado posed an immediate threat to the safety of the Defendants or to others.

---

[1] Defendants Solarino used closed fist strikes and his taser when he was the only officer on scene dealing with Alvarado, but the Court already ruled that this force was reasonable. Defendants intend to seek a jury instruction advising the jury of the Court's ruling for this use of force.

  a. Plaintiff contends: Alvarado was quickly subdued by Defendants and posed no threat, immediate or otherwise, to the safety of Defendants. Certainly, by the time Alvarado was handcuffed and surrounded by several Defendants, he no longer posed a threat to officers or civilians. In particular, there were no civilians at risk after Defendants Yeandle and Ake arrived to the scene.

  b. Defendants contend: Alvarado posed an immediate threat to the civilian witnesses and to all the officers involved in attempting to control and detain him. He demonstrated exceptional strength and was not complying with the Defendants' efforts to get him under control.

5. Issue: Whether Alvarado was actively resisting arrest or attempting to evade arrest by flight.

  a. Plaintiff contends: Alvarado was actively attempting to flee when Solarino arrived and began engaging with him. Alvarado continued resisting officers until a few seconds after the handcuffs were placed. While Alvarado continued verbalizing words of resistance after this point, he was no longer physically resisting for purposes of the Graham v. Connor analysis. After being handcuffed, the bulk of Alvarado's physical gestures were consistent with his trying to breathe, not consistent with his trying to resist.

  b. Defendants contend: Alvarado was actively resisting arrest and had attempted to evade arrest by fleeing. Even after being handcuffed and placed in the first TARP device, Alvarado could still kick and thrash his legs. The first spit sock was placed because he was spitting and the officers were concerned that his bodily fluids could get on them or TFD personnel upon their arrival to assess him. The second TARP was placed because the first was improperly applied and Alvarado could still kick and thrash his legs. TFD would not assess him until it was safe for them to do so.

9

6.   Issue: What was the amount of time Defendants had to determine the type and amount of force that reasonably appeared necessary and were there any changing circumstances during that period.

    a.   Plaintiff contends: As defendants Yeandle, Ake, (et al) arrived on the scene, they heightened the use of force. During the first few minutes of the interaction, Defendants Solarino, Yeandle, and Ake used their body weight on sensitive areas of Alvarado's body – notably his neck and upper back. At one point early during the interaction between Defendants and Alvarado, one of the individual Defendants said out loud: "he's detained." There was significant body weight applied after this moment while Defendant was in the prone position. Additionally, both TARP devices were applied after this point. After this moment, Alvarado's physical resistance significantly diminished. Significant level of force, particularly the use of bodyweight, was used after Alvarado's level of resistance declined.

    b.   Defendants contend: Defendants used their strength, and at times their body weight, to try and control and detain Alvarado. Alvarado continued to actively resist until he was placed in handcuffs and the first TARP was applied. Alvarado was actively resisting when each Defendant arrived to assist. He did not change his level of resistance or comply while Defendants were trying to put him in handcuffs or while they were applying the first TARP.

7.   Issue: Whether any effort was made by Defendants to temper or to limit the amount of force.

    a.   Plaintiff contends: After Alvarado was deemed detained, Defendant Gamez instructed his fellow officers to place Alvarado in the "recovery position". However, Defendants failed to place Alvarado in the recovery position for approximately one minute after Gamez made this warning.

During that minute, officers continued putting bodyweight on top of a prone suspect – a use of force deemed to be 'deadly force' within the rubric of Graham v. Connor. During this minute period of time, Alvarado's level of resistance was limited. Additionally, after being placed in the recovery position for approximately five minutes, Defendants forced Alvarado back onto his stomach potentially with additional bodyweight for brief periods. minutes.

b.  Defendants contend: See above. Also, Defendants did not use batons, tasers, or even closed hand fist strikes, all of which would be a greater level of force than what they were using while trying to detain Alvarado. The evidence at trial will be that Defendants' use of force was the minimal amount of physical force that an officer can use during an encounter like this. The evidence will further demonstrate that officers are trained that they may use a greater level of force than what was used in this case under similar facts and circumstances.

8.  Issue: What injury or injuries did Alvarado suffer as a result of the Defendants' use of force.

a.  Plaintiff contends: Alvarado ultimately died as a result of Defendants' use of force. He would not have died had he not interacted with Defendants that day. Additionally, because multiple police officers were acting in concert to achieve a common goal of subduing a suspect, Plaintiff is not required to prove each individual officer's contribution to Alvarado's death. By contrast, a factfinder will be required to determine whether each individual Defendant independently exerted an excessive level of force and whether the officers' collective actions were a "substantial factor" in causing Alvarado's death. Independent of death, the officers caused significant pre-death pain and suffering.

b. Defendants contend: Plaintiff will not be able to establish any Defendant caused Alvarado's death or any injury. He was involved in a car crash, was pulled off a block wall he attempted to flee over, and the force used by Solarino to include physically struggling with Alvarado, punching him multiple times, and use of his taser was already found to be reasonable. Alvarado suffered a cardiac arrest over 12 minutes after Defendants used the last bit of force that is at issue in this case; the application of the second TARP. Plaintiff cannot prove that any Defendants' use of force caused or contributed to his death. The Pima County Medical Examiner concluded that Alvarado's death was "an accident" and it was not determined a "homicide." Plaintiff does not have any expert or any evidence that proves any Defendant caused Alvarado an injury or his death.

## VII.  CONTESTED ISSUES OF LAW

**The following are issues of law to be tried and determined upon trial. Each issue of law must be stated concisely, separately and in specific terms, followed by the parties' contentions as to each issue.**

1. Issue: Whether the Defendants' use of force under the particular circumstances confronting them was objectively reasonable.

   a. Plaintiff contends: No reasonable jury would find that Alvarado posed a serious threat to officers or civilians after having been handcuffed and after an officer verbally said "detained." The level of force used (i.e., the bodyweight) was deadly force or, at the very least, potentially deadly force.

   b. Defendants contend: Alvarado fled a serious car crash, with injuries unknown to most of the Defendants. Some Defendants also believed that Alvarado was potentially the armed suspect who fled a nearby and close in time homicide/shooting incident. When he was first encountered it was unknown whether he was armed. Solarino had already been struggling with Alvarado to control and detain him and the Defendants who responded to

assist all knew this fact either because they could see it as they arrived or they heard it broadcasted over the TPD radio. Even with Ake, Yeandle, Gradias, and Gamez assisting, it took minutes before they could get Alvarado in handcuffs and then the first TARP, which was improperly placed because Alvarado continued resistance. The evidence at trial will show that Alvarado was actively and aggressively resisting the majority of the time the Defendants were using their strength to try and control and detain him. The evidence will show that the Defendants used the least amount of force during this encounter. The evidence will also show that even when they used their body weight, it was only long enough to put handcuffs on Alvarado, or the TARP devices, and never in a manner that was unreasonable based on the circumstances Defendants were faced with.

2.  Issue: Based on the facts presented at trial, are any of the Defendants entitled to qualified immunity protection because either their use of force was not a constitutional violation, or because it was not clearly established that their particular use of force would be considered a constitutional violation based on the facts surrounding this incident.

    a.  Plaintiff contends: The parties appear to agree that only the Court can make a qualified immunity determination after presentation of the evidence at trial. Plaintiff contends that, in the event of a Plaintiff verdict, the proper method is for Defendant to make a motion under Rule 50, addressing the qualified immunity issue.

    b.  Defendants contend: The Court should consider again whether Defendants are entitled to qualified immunity after hearing the facts presented at trial. If there are disputed facts after the presentation of the parties' respective cases, Defendants propose that special interrogatories should go to the jury for them to make said factual determinations, and the Court can then rely on those factual findings to decide whether qualified immunity protects

13

one or all Defendants. If the facts at trial are not disputed, the Court can make this legal determination prior to the case going to the jury.

3. Issue: Did Plaintiff present evidence that proves any named Defendants' use of force caused Damien Alvarado's death, or should Plaintiff be precluded from arguing and seeking any alleged damages relating to his death.

    a. Plaintiff contends: As noted above, Plaintiff contends that Ninth Circuit precedent does not require Plaintiff to prove each individual Defendant's contribution to Alvarado's death, so long as Plaintiff can demonstrate that certain individual Defendants acted in concert toward a common objective, that each Defendant independently used excessive force, and that the collective result was death. Furthermore, Plaintiff contends that the "substantial factor" test applies to causation. Finally, Plaintiff contends that expert witnesses on causation – while helpful to a jury determination – are not necessary to find a substantial factor leading to death. It is for the jury, drawing on the evidence and common sense, to determine whether Plaintiff had met her burden on causation.

    b. Defendants contend: Plaintiff cannot prove that any named Defendants' use of force caused Alvarado's death. Plaintiff lacks medical expert opinions to prove causation, and even the Pima County Medical Examiner, who may be called as a witness, did not conclude that any person caused or contributed to his death. His death was ruled "an accident." No Defendant was using force against him when he passed. In addition, Alvarado was alive for over 12 minutes after the second TARP device was applied, which is undisputedly the last use of force Plaintiff alleged was used in this case. Alvarado suffered a cardiac arrest resulting in his death over 5 minutes after the TFD personnel evaluated and cleared him to be transported to the hospital. Plaintiff cannot establish that the cardiac arrest was caused by any Defendants' use of force.

4. Issue: Did Plaintiff present evidence proving that any Defendant caused Alvarado pain and suffering during the incident, or should Plaintiff be precluded from arguing or seeking damages for pre-death pain and suffering and only be allowed to seek nominal damages after first proving a particular Defendant caused the alleged pain and suffering.

    a. Plaintiff contends: Defendants Solarino, Yeandle, and Ake, in particular, placed their full body weight on Alvarado's windpipe, neck, and upper back. This inhibited Alvarado's ability to breathe, causing Alvarado to feel as if he was suffocating. Alvarado's state of inebriation does not change the fact that he subjectively perceived himself to be suffocating, as evidenced by his many statements to the effect of "I can't breathe.".

    b. Defendants contend: The evidence will show that Alvarado had a high level of methamphetamines in his system. He had just been involved in a serious multi-vehicle car crash, he was pulled from a 6 foot brick wall, punched several times by Solarino, and tased by Solarino all before the use of force that is now the subject of Plaintiff's Fourth Amendment claim even occurred. In addition, Alvarado can be seen actively fighting with Defendants, banging his own head on a cement parking block on the ground, and physically straining himself during the entire encounter. Based on the foregoing, Plaintiff will not be able to prove that any Defendants' use of force caused Alvarado any pre-death pain or suffering. Rather, the evidence will prove to the jury that any alleged pain and suffering he experienced was self-inflicted.

5. Issue: If Plaintiff succeeds against any Defendant, there will be the issue of what, if any, attorney's fees Plaintiff is entitled to under 42 U.S.C. § 1988.

    a. Plaintiff contends: If Plaintiff prevails, Plaintiff will be entitled to submit a fee petition seeking the lodestar measure, pursuant to 42 U.S.C. § 1988.

b.   Defendants contend: If Plaintiff prevails as to any Defendant, this issue will need to be briefed after trial.

6.   Issue: If Plaintiff succeeds against any Defendant, whether damages may include so-called 'hedonic' damages (also commonly referred to as enjoyment-of-life damages.

a.   Plaintiff contends: The Ninth Circuit clearly established in 2021 that hedonic damages are available in excessive force cases brought under Section 1983. Additionally, courts have concluded that a jury can award a hedonic damages number without the aid of an economics expert witness. Finally, federal case law interpreting Arizona state law makes clear that there is only one Plaintiff that has standing under Section 1983 in death cases—the estate itself.

b.   Defendants contend: The remaining excessive force claims alleged under 42 U.S.C. § 1983, are brought on behalf of Mr. Alvarado's estate. The wrongful death claim and Ms. Briseno's claim on her own behalf were previously dismissed. *See* Doc. 60. Mr. Alvarado's minor child is not a named party. As such, "hedonic" damages cannot be recovered in this lawsuit. Plaintiff cannot seek damages for Irene Briseno or Mr. Alvarado's minor child in this lawsuit. Defendants will be filing a motion in *limine* to address this issue.

7. Issue: Did Plaintiff present sufficient evidence during the jury trial to seek punitive damages against any individually named defendant?

a.   Plaintiff contends: There is ample evidence from which a reasonable jury could conclude that Defendants Ake, Solarino and Yeandle acted maliciously, oppressively, or in reckless disregard of the decedent's rights. In 2022, Defendants raised precisely this argument to the Court in their 12.b.6 briefing and this Court denied Defendants' motion on the punitive damages issue. Doc 60. Defendants had a second opportunity to strip the

16

punitive damages issue from the jury's consideration and yet chose not to raise that issue in their motion for summary judgement after the close of discovery. Plaintiff has put forward the following factual details supporting punitive damages: Defendants could clearly hear the decedent expressing difficulty breathing at least six times. Defendants responded to Alvarado's pleas for breath by callously dismissing him, stating "if you're talking you're breathing", "stop complaining", and "shut your fucking mouth". Further, they mocked his ragged breathing sounds in an insulting tone of voice. Even after Defendants Ake, Yeandle and Solarino were urged by their Defendant Gamez to get Alvarado into the recovery position as quickly as possible, Defendants Yeandle, Ake, and Solarino kept Alvarado face down and continued to place body weight on him for at least three minutes following the first time Alvarado said "I can't breathe". Doc 131.

    b.  Defendants' contend: The jury should not be asked to assess punitive damages because Plaintiff will not be able to present sufficient evidence to convince a reasonable juror that any individual defendant's conduct was malicious, oppressive or in reckless disregard of the decedent's rights.

**VIII.  LIST OF WITNESSES**

**Each party shall provide a list of witnesses intended to be called at trial. As to each witness, identify whether he or she is a fact or expert witness and include a brief statement of the expected testimony of any expert witness.**

**Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses' the party cannot rely on the witness having been listed or subpoenaed by another party.**

17

*Plaintiff intends to call the following percipient fact witnesses:*

    1.  Justin Canovali

    2.  Jayce Canovali

    3.  Donovan Vance

    4.  Joseph Gradias

    5.  Keith Goldstein

    6.  Marco Durazo

    7.  Mike Gamez

    8.  Nick Solarino

    9.  Raymond Fleck

    10. Ryan Ake

    11. Scott Ellis

    12. Sean Yeandle

    13. Silas Spencer

    14. Dr. Jennifer Chen

    15. Dr. Ashley L. Lukefahr

    16. Monica Prieto

    17. Detective Scott Ahlskog

*Plaintiff intends to call the following witnesses relating to damages*:

    18. Plaintiff (Irene Briseno)

    19. Jessica Valdez

    20. D'amien Alvarado

    21. Yesenia Briseno

    22. James Briseno

Defendants object to all of the above listed witnesses in so far as no one has personal knowledge regarding the material facts relevant to the pending 4th Amendment excessive force claims. Furthermore, if Plaintiff intends to call them to testify as damage witnesses, each should be limited to testifying about damages this Court

determines Plaintiff is permitted to seek in this lawsuit. Defendants will be filing a motion in *limine* to address what damages they believe Plaintiff may seek and will request that some or all of the witnesses be precluded or limited based on this Court's findings.

***Defendants intend to call the following fact witnesses at trial:***

1. Victim Xiyan Li
2. Victim James Fred Garliepp III
3. Witness Mustafa Amencamara Nasheed
4. Witness Heather Lynn Mcadaragh
5. Witness Lance Charles Russell
6. Witness 911 Caller Jasmine
7. Witness 911 Caller Katlyn Taylor
8. Witness Hank Huntsinger
9. Witness Heather
10. Witness Additional 911 Caller
11. Nicolo Solarino
12. Sean Yeandle
13. Henry Gamez
14. Ryan Ake
15. Joseph Gradias
16. Francisco Santa Maria
17. Marco Durazo
18. Officer Donovan Vance
19. Sergeant Scott Ellis
20. Sergeant Eric Evans
21. Officer John Jackson
22. Deputy Chief Monica Prieto

*If needed, Defendants may call the following fact witnesses at trial:*

23. TFD Paramedic Raymond Fleck

24. TFD Engineer Chad Decastro

25. TFD Paramedic Ryan Gaudioso

26. TFD Paramedic Keith Goldstein

27. TFD Fire Fighter Silas Spencer

28. Joshua B. Gaither

29. Jennifer Chen

30. Justin Kneup

31. Fabian Miranda

32. Iris Betancourt

33. Detective Scott Ahlskog

34. Detective Patrick Robinson

35. Officer Cole Lamey

36. TFD Captain Matthew Ford

37. Sergeant Jesse Chlopowicz

38. Officer Quentin Luce

39. Detective Michael Kishbaugh

40. Officer Rico Acevedo

41. Detective Nicholas Droban

42. Sergeant Craig Kerlin

43. Detective Edward Harper

44. Officer Gregory Shore

45. Detective Troy Wallen

46. Crime Scene Technician Steven Wang

47. Detective Shawn Simmons

48. CSS Supervisor Thomas Grant

49. Detective Brianne Perez

50. Officer Christopher Trusk

51. Officer Erin Brown

52. Lieutenant Frank Hand

53. Detective Shane Barrett

54. Officer Michael Holden

55. Detective Christal Matthews

56. Officer Evan Hasterok

57. Officer Devin Johnson

58. Officer Evan Gast

59. Officer Travis Johnson

60. Officer Kyle Linares

61. Officer Ricardo Islava

62. Officer Mark Brazill

63. Officer Francisco Lopez

64. Officer Crystal Farley

65. Detective William Fisher

66. Diana Duffy

67. Matt Ronstadt

68. Mickey Petersen

69. Sergeant Brian Knight

70. Officer Abel Urzua

**IX.    LIST OF EXHIBITS**

**Each party shall provide a list of numbered exhibits. As to each exhibit, the party shall include a description containing sufficient information to identify and distinguish the exhibit. Further, a statement of either UNCONTESTED or CONTESTED shall follow each listed exhibit. If contested, a brief statement of the objection by the opposing party shall also follow the listed exhibit. Exhibits**

**shall be marked according to the instructions received from the Court (which shall be provided approximately two weeks prior to trial).**

**Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.**

***Plaintiff's Exhibits:***

1.  Tucson Sentinel Event Review Board (SERB) Report (bates-stamped 20-387COT1234-20-387COT1313)

Defendants' objection: This document covers another unrelated incident in addition to subject incident. Fed. R. Evid. 401, 402, and 403. Plaintiff abandoned her *Monell* claims against the City of Tucson, and as such all other incidents, events, or occurrences are irrelevant to the remaining claims. *Id.; see also* Doc. 131. The SERB review and report are a result of the City of Tucson, and the Tucson Police Department's, ongoing attempts to improve its training and implementation of use of force policies and procedures, and their continued efforts to improve its police force's handling of incidents in the community. For this reason, too, the SERB and this document's contents should be precluded as subsequent remedial measures pursuant to Fed. R. Evid. 407. Additionally, this document is fraught with hearsay and double hearsay under Fed. R. Evid 802 and 805, and should be precluded for this reason too. Defendants will file a motion in *limine* to address this exhibits inadmissibility.

2.  Irene Briseno Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

3.  Jessica Valdez Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

4.  Nicolo Solarino Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

5.  Donovan Vance Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

6.  Joseph Gradias Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

7.  Marco Durazo Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

8.  Mike Gamez Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

9.  Ryan Ake Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

10. Sean Yeandle Deposition Transcript

Defendants' objection: Plaintiff can only use deposition transcripts if, and as, permitted under Fed. R. Civ. P. 32. Defendants are not stipulating to the blanket use of any deposition transcript.

11. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1721 Solarino redacted, bates-stamped 20-387COT1471 (or unredacted version[2])

12. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1807 Solarino redacted, bates-stamped 20-387COT1489 (or unredacted version)

13. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1721 Gamez redacted, bates-stamped 20-387COT1472 (or unredacted version)

14. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1723 Durazo redacted, bates-stamped 20-387COT1473(or unredacted version)

15. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1741 Ake redacted, bates-stamped 20-387COT1474 (or unredacted version)

16. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1741 Yeandle redacted, bates-stamped 20-387COT1475 (or unredacted version)

17. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1742 Jackson redacted, bates-stamped 20-387COT1476

18. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1742 Vance redacted, bates-stamped 20-387COT1477 (or unredacted version)

19. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1744 Gradias redacted, bates-stamped 20-387COT1481(or unredacted version)

20. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1747 Evans redacted, bates-stamped 20-387COT1483 (or unredacted version)

21. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1747 Santamaria redacted, bates-stamped 20-387COT1484 (or unredacted version)

22. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1752 Ellis redacted, bates-stamped 20-387COT1485 (or unredacted version)

23. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1755 Evans redacted, bates-stamped 20-387COT1486 (or unredacted version)

---

[2] Some videos' redactions block necessary views and unredacted versions may be used to alleviate this barrier as noted after each listed video exhibit to which this applies. Counsel will confer if an unredacted version need to be shown prior to the use at trial.

24. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1756    Evans    redacted, bates-stamped 20-387COT1487 (or unredacted version)

25. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1829    Gradias    redacted, bates-stamped 20-387COT1491 (or unredacted version)

26. Transcript of audio interview of Marco Durazo (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0445 – 20-387COT0471 and 20-387COT0526 – 20-387COT0552)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

27. Transcript of audio interview of Francisco Santa Maria (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0499 – 20-387COT0513)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

28. Transcript of audio interview of Justin Canovali (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0553 – 20-387COT0576)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

29. Transcript of audio interview of Jayce Canovali (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0577 – 20-387COT0608)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

30. Transcript of audio interview of Joseph Gradias (bates-stamped 20-387COT04940 – 20-387COT4959)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

31. Transcript of audio interview of Nicolo Solarino (bates-stamped 20-387COT4960 - 20-387COT4995)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      32. Transcript of audio interview of Ryan Ake (bates-stamped 20-387COT4996 – 20-387COT5019)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      33. Transcript of audio interview of Mike Gamez (bates-stamped 20-387COT5020 – 20-387COT5051)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      34. Transcript of audio interview of Sean Yeandle (bates-stamped 20-387COT5052 – 20-387COT5072)

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      35. Tucson Police Department Audio – Interview of Officer Donovan Vance dated March 22, 2020, bates-stamped 20-387COT1461

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      36. Tucson Police Department Audio – Interview of Jayce Canovali dated March 22, 2020, bates-stamped 20-387COT1464

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      37. Tucson Police Department Audio – Interview of Officer Santa Maria dated March 22, 2020, bates-stamped 20-387COT1465

Defendants' objection: Plaintiff can only use transcripts if, and as, permitted under the Federal Rules of Evidence. *See* Rules 401, 402, 403, 612, 613, 802, 805, and 806.

      38. Pima County Medical Examiner Autopsy Report (bates-stamped 20-387COT3206 - 20-387COT3385

1   Defendants' objection: This exhibit is not admissible without a testifying witness. *See* Fed.

2   R. Evid. 802, 805, and 901.

3       39. Tucson Police Department Event Chronology, bates-stamped 20-387COT0003 –

4           20-387COT0069

5       40. Tucson Police Department Event Chronology, bates-stamped 20-387COT0134 –

6           20-387COT0181

7   ***Defendants' Exhibits:***

8   ***Defendants will use the following exhibits at trial*:**

9       1. Intersection of Prince and Campbell Google Map (bates-stamped 20-

10          387COT - 20-387COT3698)

11      2. Tucson Police Department 911 call from Lanita w/ Sirius XM, bates-

12          stamped 20-387COT0126

13      3. Tucson Police Department 911 call Unknown Caller/Heather, bates-

14          stamped 20-387COT0127

15      4. Tucson Police Department Commo Audio, bates-stamped 20-

16          387COT0128

17      5. E200820739 Prince & Campbell MVA and 911 Calls, bates-stamped 20-

18          387COT0129

19      6. E200820739 Prince & Campbell Radio Audio, bates-stamped 20-

20          387COT0130

21      7. 2003220124 TPD 911/Radio Transmission Audio, bates-stamped 20-

22          387COT0131

23      8. 2003220124 TPD 911/Radio Transmission Audio, bates-stamped 20-

24          387COT0132

25      9. 2003220124 TPD BLANK/NO AUDIO, bates-stamped 20-387COT0133

26      10. Tucson Police Department Event Chronology, bates-stamped 20-

27          387COT0134 – 20-387COT0181

28

11. Tucson Police Department Individual Unit History, bates-stamped 20-387COT0182 – 20-387COT0217

12. Tucson Police Department Unit History, bates-stamped 20-387COT0218 – 20-387COT0237

13. Tucson Police Department Chain of Custody, bates-stamped 20-387COT0238 – 20-387COT0262

14. Tucson Police Department Evidence Sheet, bates-stamped 20-387COT0263 – 20-387COT0265

15. Tucson Police Department Official Report, bates-stamped 20-387COT0266 – 20-387COT0618

16. Tucson Police Department Taser Record for Officer Solarino, bates-stamped 20-387COT0619

17. Tucson Police Department Photos, bates-stamped 20-387COT0620 – 20-387COT748

18. Tucson Police Department Photographs Disc 1, bates-stamped 20-387COT0749 – 20-387COT1203

19. Sample spit sock (bates-stamped 20-387COT4405)

20. TARP (bates-stamped 20-387COT4407)

21. Transport hood (bates-stamped 20-387COT4408

22. Tucson Fire Department F200820168 Radio Audio, bates-stamped 20-387COT1204

23. Tucson Fire Department Event Chronology, bates-stamped 20-387COT1205 – 20-387COT1206

24. Tucson Fire Department Unit Chronology, bates-stamped 20-387COT1207 – 20-387COT1210

25. Tucson Fire Department Patient Care Report, bates-stamped 20-387COT1211 – 20-387COT1218

26. Notice of Claim against the City of Tucson, received September 22, 2020, bates-stamped 20-387COT1455 – 20-387COT1458

27. Tucson Police Department Search Warrant Audio, bates-stamped 20-387COT1470

28. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1721    Solarino redacted, bates-stamped 20-387COT1471 (or unredacted version[3])

29. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1807    Solarino redacted, bates-stamped 20-387COT1489 (or unredacted version)

30. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1721    Gamez redacted, bates-stamped 20-387COT1472 (or unredacted version)

31. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1723    Durazo redacted, bates-stamped 20-387COT1473(or unredacted version)

32. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1741    Ake redacted, bates-stamped 20-387COT1474 (or unredacted version)

33. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1741    Yeandle redacted, bates-stamped 20-387COT1475 (or unredacted version)

34. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1742    Jackson redacted, bates-stamped 20-387COT1476

35. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1742    Vance redacted, bates-stamped 20-387COT1477 (or unredacted version)

36. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1744    Gradias redacted, bates-stamped 20-387COT1481(or unredacted version)

37. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1747    Evans redacted, bates-stamped 20-387COT1483 (or unredacted version)

38. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1747    Santamaria redacted, bates-stamped 20-387COT1484 (or unredacted version)

---

[3] Some videos' redactions block necessary views and unredacted versions may be used to alleviate this barrier as noted after each listed video exhibit to which this applies. Counsel will confer if an unredacted version need to be shown prior to the use at trial.

39. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1752    Ellis redacted, bates-stamped 20-387COT1485 (or unredacted version)

40. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1755    Evans redacted, bates-stamped 20-387COT1486 (or unredacted version)

41. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1756    Evans redacted, bates-stamped 20-387COT1487 (or unredacted version)

42. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1829    Gradias redacted, bates-stamped 20-387COT1491 (or unredacted version)

43. (Extraction_1.1)_Traffic_Collision Bermudez redacted, bates-stamped 20-387COT1497

44. Tucson Police Department General Orders - 2000 Use of Force Revised February 27, 2018; October 27, 2016; September 1, 2017; September 20, 2017 (bates-stamped 20-387COT2979 - 20-387COT3043)

42. Tucson Police Department General Orders - 2700 Special Circumstances Revised March 15, 2018 (bates-stamped 20-387COT3044 - 20-387COT3058)

43. Tucson Police Department General Orders - 2700 Investigative Protocols Revised December 21, 2009 (bates-stamped 20-387COT3059 - 20-387COT3090)

44. Tucson Police Department General Orders - 3700 Specialized Department Equipment Revised September 19, 2019 (bates-stamped 20-387COT3091 - 20-387COT3125)

45. COT Rsp to Briseno 1st RFP No. 3: COT2294-2379 (OPS Administrative Documents) redacted

46. COT Rsp to Briseno 1st RFP No. 3: COT2380-2405 (OPS Summary)

47. COT Rsp to Briseno 1st RFP No. 3: COT2406-2443 (OPS Personnel Reports)

48. COT Rsp to Briseno 1st RFP No. 3: COT2444-2450 (OPS Coc Personnel Reports)

49. COT Rsp to Briseno 1st RFP No. 3: COT2451-2480 (OPS Discipline Documents)

50. Irene Briseno Deposition Transcript (for cross-examination, if needed)

51. Jessica Valdez Deposition Transcript (for cross-examination, if needed)

*If the need arises, Defendants will use the following exhibits at trial:*

45. Spit sock invoice and information (bates-stamped 20-387COT2952 – 20-387COT2956

46. Pima County Medical Examiner Autopsy Report (bates-stamped 20-387COT3206 - 20-387COT3385

47. Banner University Medical Center Medical Records (bates-stamped 20-387COT4654 – 20-387COT4939)

48. Curriculum Vitae of Joshua B. Gaither, M.D., including publications (bates-stamped 20-387COT4339 – 20-387COT4402)

49. Curriculum Vitae of Jennifer Chen, M.D., including publications (bates-stamped 20-387COT4403 – 20-387COT4404)

50. Curriculum Vitae/Resume of Rico Acevedo (bates-stamped 20-387COT5073 – 20-387COT2074)

51. Transcript of audio interview of Donavan Vance (previously disclosed as City of Tucson Initial Disclosure, Tucson Police Department Official Report (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0428 – 20-387COT0438 and 20-387COT0488 – 20-387COT0498)

52. Transcript of audio interview of John Jackson (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0439 – 20-387COT0444 and 20-387COT0520 – 20-387COT0525)

53. Transcript of audio interview of Marco Durazo (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0445 – 20-387COT0471 and 20-387COT0526 – 20-387COT0552)

54. Transcript of audio interview of Francisco Santa Maria (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0499 – 20-387COT0513)

55. Transcript of audio interview of Cole Lamey (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0514 – 20-387COT0519)

56. Transcript of audio interview of Justin Canovali (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0553 – 20-387COT0576)

57. Transcript of audio interview of Jayce Canovali (bates-stamped 20-387COT0266 – 20-387COT0618, at 20-387COT0577 – 20-387COT0608)

58. Transcript of audio interview of Joseph Gradias (bates-stamped 20-387COT04940 – 20-387COT4959)

59. Transcript of audio interview of Nicolo Solarino (bates-stamped 20-387COT4960 - 20-387COT4995)

60. Transcript of audio interview of Ryan Ake (bates-stamped 20-387COT4996 – 20-387COT5019)

61. Transcript of audio interview of Mike Gamez (bates-stamped 20-387COT5020 – 20-387COT5051)

62. Transcript of audio interview of Sean Yeandle (bates-stamped 20-387COT5052 – 20-387COT5072)

63. Tucson Police Department Pulse Graph Taser Record for Officer Solarino (bates-stamped 20-387COT5075)

64. Damien Alvarado's BMW X5, Plate CRZ4628, VIN: 5UXFA53563LV83669 (bates-stamped 20-387COT4406)

65. 911 calls/radio, bates-stamped 20-387COT0001

66. 2901 E Ft Lowell 3-22-20 Radio, bates-stamped 20-387COT0002

67. Tucson Police Department Event Chronology, bates-stamped 20-387COT0003 – 20-387COT0069

68. Tucson Police Department Individual Unit History, bates-stamped 20-387COT0070 – 20-387COT0098

69. Tucson Police Department Unit History, bates-stamped 20-387COT0099 – 20-387COT0125

70. Arizona Peace Officer Standards and Training Board, 585 – Hour Basic Curriculum, Model Lesson Plan, Managing In-Custody Death 8.5.5, June 2014 bates-stamped 20-387COT2481 – 20-387COT2490

71. Tucson Police Department Excited Delirium Response Protocol (bates-stamped 20-387COT2491, sent via OneDrive Link)

72. Tucson Police Department Audio – Interview of Officer John Jackson dated March 22, 2020, bates-stamped 20-387COT1459

73. Tucson Police Department Audio – Interview of Officer Cole Lamey dated March 22, 2020, bates-stamped 20-387COT1460

74. Tucson Police Department Audio – Interview of Officer Donovan Vance dated March 22, 2020, bates-stamped 20-387COT1461

75. Tucson Police Department Audio – Interview of Keith Goldstein dated March 24, 2020, bates-stamped 20-387COT1462

76. Tucson Police Department Audio – Interview of Ryan Gaudioso dated March 24, 2020, bates-stamped 20-387COT1463

77. Tucson Police Department Audio – Interview of Jayce Canovali dated March 22, 2020, bates-stamped 20-387COT1464

78. Tucson Police Department Audio – Interview of Officer Santa Maria dated March 22, 2020, bates-stamped 20-387COT1465

79. Tucson Police Department Audio – Interview of Engineer DeCastro dated March 24, 2020, bates-stamped 20-387COT1466

80. Tucson Police Department Audio – Interview of Raymond Fleck dated March 24, 2020, bates-stamped 20-387COT1467

81. Tucson Police Department Audio – Interview of Silas Spencer dated March 24, 2020, bates-stamped 20-387COT1468

82. Tucson Police Department Audio – Interview of Captain Ford dated March 24, 2020, bates-stamped 20-387COT1469

83. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1743    Lechner redacted, bates-stamped 20-387COT1478

84. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1743   Mclaughlin redacted, bates-stamped 20-387COT1479

85. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1743    Lamey redacted, bates-stamped 20-387COT1480

86. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1746    Hasterock redacted, bates-stamped 20-387COT1482

87. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1807   Chlopowicz redacted, bates-stamped 20-387COT1488

88. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1814    Jackson redacted, bates-stamped 20-387COT1490

89. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1851    Johnson redacted, bates-stamped 20-387COT1492

90. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1918    Corrigan redacted, bates-stamped 20-387COT1493

91. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1921    Lopez redacted, bates-stamped 20-387COT1494

92. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1955    Linares redacted, bates-stamped 20-387COT1495

93. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_2052    Hasterok redacted, bates-stamped 20-387COT1496

94. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1850       Trusk redacted, bates-stamped 20-387COT1498

95. (Extraction_1.1)_AXON_Body_2_Video_2020-03-22_1933       Corrigan redacted, bates-stamped 20-387COT1499

96. (Extraction_1.2)_AXON_Body_2_Video_2020-03-22_1918       Johnson redacted, bates-stamped 20-387COT1500

97. (Extraction_1.2)_AXON_Body_2_Video_2020-03-22_2025       Johnson redacted, bates-stamped 20-387COT1501

98. (Extraction_1.1)_(Clip_1.1)_AXON_Body_2_Video_2020-03-22_1910 Williams redacted, bates-stamped 20-387COT1502

99. (Extraction_1.1)_(Clip_2.1)_AXON_Body_2_Video_2020-03-22_1910 Williams redacted, bates-stamped 20-387COT1503

100.   (Extraction_1.2)_AXON_Body_2_Video_2020-03-22_1851       Gast redacted, bates-stamped 20-387COT1504

101.   Sonora Behavioral Health Response to Subpoena (bates-stamped 20-387COT - 20-387COT3699)

102.   Certified copy of Tucson City Court File for Citation 21220489 (bates-stamped 20-387COT3700 – 20-387COT3717)

103.   Certified copy of Tucson City Court File for Citation 21234967 (bates-stamped 20-387COT3718 – 20-387COT3731)

104.   Certified copy of Tucson City Court File for Citation 21739406 (bates-stamped 20-387COT3732 – 20-387COT3735)

105.   Certified copies of Cochise County Superior Court Case CR201200657 (bates-stamped 20-387COT4207 – 20-387COT4234)

106.   Certified copies of Cochise County Superior Court Case CR201200523 documents (bates-stamped 20-387COT4235 – 20-387COT4260)

107. Certified copies of Cochise County Superior Court Case CR2008000659 documents (bates-stamped 20-387COT4261- 20-387COT4278)

108. Certified copies of United States District Court Case 4:09-mj-01667 documents (bates-stamped 20-387COT4279 – 20-387COT4284)

109. Pima County Board of Supervisors Ordinance 2021-13 regarding Pima County Medical Examiner fees (bates-stamped 20-387COT3736 – 20-387COT3738)

110. CR20171110 PCN Activity Report Certified (bates-stamped 20-387COT2957 – 20-387COT2958)

111. CR20171110 Commitment Order Certified (bates-stamped 20-387COT2959 – 20-387COT2960)

112. CR20171110 Sentencing Minute Entry Certified (bates-stamped 20-387COT2961 – 20-387COT2965)

113. CR20171110 Indictment (bates-stamped 20-387COT2966)

114. CR20171110 Plea Agreement (bates-stamped 20-387COT2967 – 20-387COT2971)

115. CR20171110 Presentence Report (bates-stamped 20-387COT2972 – 20-387COT2978)

116. Cochise County Sheriff's Office Report for Incident 11-00987 (bates-stamped 20-387COT3386 – 20-387COT3388)

117. Cochise County Sheriff's Office Report for Incident 12-09445 (bates-stamped 20-387COT3389 – 20-387COT3391)

118. Cochise County Sheriff's Office Report for Incident 12-14233 (bates-stamped 20-387COT3392 – 20-387COT3394)

119. Cochise County Sheriff's Office Report for Incident 12-14574 (bates-stamped 20-387COT3395 – 20-387COT3397,

120.    Tucson Police Department Case No. 1702280075 Chain of Custody (bates-stamped 20-387COT3398 - 20-387COT3399)

121.    Tucson Police Department Case No. 1702280069 Chain of Custody (bates-stamped 20-387COT3400 - 20-387COT3401)

122.    Tucson Police Department Case No. 1912300103 Chain of Custody (bates-stamped 20-387COT3402 - 20-387COT3404)

123.    Tucson Police Department Case No. E162800222 1610060138 Event Chronology (bates-stamped 20-387COT3405 - 20-387COT3407, sent via OneDrive Link)

124.    Tucson Police Department Case No. E170590058 1702280069 Event Chronology (bates-stamped 20-387COT3408 - 20-387COT3413)

125.    Tucson Police Department Case No. E170590079 1702280075 Event Chronology (bates-stamped 20-387COT3414)

126.    Tucson Police Department Case No. E193551208 1912210244 Event Chronology (bates-stamped 20-387COT3415 - 20-387COT3418)

127.    Tucson Police Department Case No. E193640422_1912300103 Event Chronology (bates-stamped 20-387COT3419 - 20-387COT3422)

128.    Tucson Police Department Case No. 1702280069 Evidence Sheet (bates-stamped 20-387COT3423)

129.    Tucson Police Department Case No. 1702280075 Evidence Sheet (bates-stamped 20-387COT3424)

130.    Tucson Police Department Case No. 1912300103 Evidence Sheet (bates-stamped 20-387COT3425)

131.    Tucson Police Department Case No. E162800222 1610060138 Individual Unit History (bates-stamped 20-387COT3426 - 20-387COT3458)

132.    Tucson Police Department Case No. E170590058 1702280069 Individual Unit History (bates-stamped 20-387COT3459 - 20-387COT3473)

133.    Tucson Police Department Case No. E170590079 1702280075 Individual Unit History (bates-stamped 20-387COT3474)

134.    Tucson Police Department Case No. E193551208 1912210244 Individual Unit History (bates-stamped 20-387COT3475 - 20-387COT3478)

135.    Tucson Police Department Case No. E193640422 1912300103 Individual Unit History (bates-stamped 20-387COT3479 - 20-387COT3481)

136.    Tucson Police Department Case No. E162800222 1610060138 Unit History (bates-stamped 20-387COT3482 - 20-387COT3483)

137.    Tucson Police Department Case No. E170590058 1702280069 Unit History (bates-stamped 20-387COT3484 - 20-387COT3489)

138.    Tucson Police Department Case No. E170590079 1702280075 Unit History (bates-stamped 20-387COT3490)

139.    Tucson Police Department Case No. E193551208 1912210244 Unit History (bates-stamped 20-387COT3491 - 20-387COT3492)

140.    Tucson Police Department Case No. E193640422 1912300103 Unit History (bates-stamped 20-387COT3493 - 20-387COT3494)

141.    Tucson Police Department Case No. 1610060138 Official Report (bates-stamped 20-387COT3495 - 20-387COT3513)

142.    Tucson Police Department Case No. 1702280069 Official Report (bates-stamped 20-387COT3514 - 20-387COT3540)

143.    Tucson Police Department Case No. 1702280075 Official Report (bates-stamped 20-387COT3541 - 20-387COT3574)

144.  Tucson Police Department Case No. 1912210244 Official Report (bates-stamped 20-387COT3575 - 20-387COT3584)

145.  Tucson Police Department Case No. 1912300103 Official Report (bates-stamped 20-387COT3585 - 20-387COT3600)

146.  Tucson Police Department Case No. 1610060138 Photographs (bates-stamped 20-387COT3601 - 20-387COT3622)

147.  Tucson Police Department Case No. 1702280075 Photographs (bates-stamped 20-387COT3623 - 20-387COT3652)

148.  Tucson Police Department Case No. 1912210244 Photographs (bates-stamped 20-387COT3653 - 20-387COT3683)

149.  Tucson Police Department Case No. 1912300103 Photographs (bates-stamped 20-387COT3684 - 20-387COT3697)

150.  Ryan Ake's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, and Training/Course Transcripts (bates-stamped 20-387COT4409 – 20-387COT4464)

151.  Sean Yeandle's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, and Training/Course Transcripts (bates-stamped 20-387COT4465 – 20-387COT4520)

152.  Nicolo Solarino's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, Training/Course Transcripts, Taser Recertification Training History, and Training Summary (bates-stamped 20-387COT4521 – 20-387COT4563)

153.  Francisco Santa Maria's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts (bates-stamped 20-387COT4564 – 20-387COT4595)

154.  Joseph Gradias's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts (bates-stamped 20-387COT4596 – 20-387COT4623)

155. Henry (Mike) Gamez's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts (bates-stamped 20-387COT4624 – 20-387COT4653)

156. COT HR File Solarino, Nicolo redacted, bates-stamped 20-387COT1505-1556

157. TPD Personnel File Solarino redacted, bates-stamped 20-387COT1557-1580

158. COT HR File Santa Maria, Francisco redacted, bates-stamped 20-387COT1581-1634

159. TPD Personnel File Santa Maria 51935 redacted, bates-stamped 20-387COT1635-1673

160. COT HR File Durazo, Marco redacted, bates-stamped 20-387COT1674-1714

161. TPD Personnel File Durazo 103297 redacted, bates-stamped 20-387COT1715-1729

162. COT HR File Gamez, Henry redacted, bates-stamped 20-387COT1730-1808

163. TPD Personnel File Gamez 49543 redacted, bates-stamped 20-387COT1809-1873

164. COT HR File Yeandle, Sean redacted, bates-stamped 20-387COT1874-1917

165. TPD Personnel File Yeandle 101978 redacted, bates-stamped 20-387COT1918-1932

166. COT HR File Vance, Donovan, redacted, bates-stamped 20-387COT1933-1992

167. TPD Personnel File Vance 103829 redacted, bates-stamped 20-387COT1993-2008

168.   COT HR File Ake, Ryan redacted, bates-stamped 20-387COT2009-2044

169.   TPD Personnel File Ake 101973 redacted, bates-stamped 20-387COT2045-2071

170.   COT HR File Gradias, Joseph redacted, bates-stamped 20-387COT2072-2116

171.   TPD Personnel File Gradias 53657 redacted, bates-stamped 20-387COT2117-2150

172.   COT HR File Evans, Eric redacted, bates-stamped 20-387COT2151-2209

173.   TPD Personnel File Evans 45656 redacted, bates-stamped 20-387COT2210-2293

174.   OPS Administrative Documents redacted, bates-stamped 20-387COT2294-2379

175.   OPS Summary, bates-stamped 20-387COT2380-2405

176.   OPS Personnel Reports, bates-stamped 20-387COT2406-2443

177.   OPS Coc Personnel Reports, bates-stamped 20-387COT2444-2450

178.   OPS Discipline Documents, bates-stamped 20-387COT2451-2480

179.   Arizona Peace Officer Standards and Training Board, 585 – Hour Basic Curriculum, Model Lesson Plan, Managing In-Custody Death 8.5.5, June 2014, bates-stamped 20-387COT2481 – 20-387COT2490

180.   Tucson Police Department Excited Delirium Response Protocol, bates-stamped 20-387COT2491

181.   Tucson Police Department Office of Internal Affairs File, 12-0411, regarding Delbert Germany, bates-stamped 20-387COT2492 – 20-387COT2755

182.   Zoll PM Worksheets and Preventive Maintenance (PM) Reports 2019, bates-stamped 20-387COT2756 – 20-387COT2840

41

183. Zoll PM Worksheets and Preventive Maintenance (PM) Reports 2018, bates-stamped 20-387COT2841 – 20-387COT2922

184. Zoll Performance Summary 03/22/2020, bates-stamped 20-387COT2923 – 20-387COT2924

185. Tucson Police Department Managing In-Custody Death PowerPoint 2020 by Officer Abel Urzua, bates-stamped 20-387COT2925 – 20-387COT2951

186. Spit sock invoice and information, bates-stamped 20-387COT2952 – 20-387COT2956

187. CR20171110 PCN Activity Report Certified, bates-stamped 20-387COT2957 – 20-387COT2958

188. CR20171110 Commitment Order Certified, bates-stamped 20-387COT2959 – 20-387COT2960

189. CR20171110 Sentencing Minute Entry Certified, bates-stamped 20-387COT2961 – 20-387COT2965

190. CR20171110 Indictment, bates-stamped 20-387COT2966

191. CR20171110 Plea Agreement, bates-stamped 20-387COT2967 – 20-387COT2971

192. CR20171110 Presentence Report, bates-stamped 20-387COT2972 – 20-387COT2978

193. Tucson Police Department General Orders 2000 Use of Force Revised February 27, 2018; October 27, 2016; September 1, 2017; September 20, 2017, bates-stamped 20-387COT2979 - 20-387COT3043

194. 2700 Special Circumstances Revised March 15, 2018, bates-stamped 20-387COT3044 - 20-387COT3058

195. 2700 Investigative Protocols Revised December 21, 2009, bates-stamped 20-387COT3059 - 20-387COT3090

196.    3700 Specialized Department Equipment Revised September 19, 2019, bates-stamped 20-387COT3091 - 20-387COT3125

197.    Pima County Medical Examiner Autopsy Photographs, bates-stamped 20-387COT3126 - 20-387COT3204

198.    Pima County Medical Examiner X-Rays, bates-stamped 20-387COT3205

199.    Pima County Medical Examiner Autopsy Report, bates-stamped 20-387COT3206 - 20-387COT3385

200.    Cochise County Sheriff's Office Report for Incident 11-00987, bates-stamped 20-387COT3386 – 20-387COT3388

201.    Cochise County Sheriff's Office Report for Incident 12-09445, bates-stamped 20-387COT3389 – 20-387COT3391

202.    Cochise County Sheriff's Office Report for Incident 12-14233, bates-stamped 20-387COT3392 – 20-387COT3394

203.    Cochise County Sheriff's Office Report for Incident 12-14574, bates-stamped 20-387COT3395 – 20-387COT3397

204.    Tucson Police Department Case No. 1702280075 Chain of Custody, bates-stamped 20-387COT3398 - 20-387COT3399

205.    Tucson Police Department Case No. 1702280069 Chain of Custody, bates-stamped 20-387COT3400 - 20-387COT3401

206.    Tucson Police Department Case No. 1912300103 Chain of Custody, bates-stamped 20-387COT3402 - 20-387COT3404

207.    Tucson Police Department Case No. E162800222 1610060138 Event Chronology (bates-stamped 20-387COT3405 - 20-387COT3407

208.    Tucson Police Department Case No. E170590058 1702280069 Event Chronology, bates-stamped 20-387COT3408 - 20-387COT3413

209.    Tucson Police Department Case No. E170590079 1702280075 Event Chronology, bates-stamped 20-387COT3414

210.    Tucson Police Department Case No. E193551208 1912210244 Event Chronology, bates-stamped 20-387COT3415 - 20-387COT3418

211.    Tucson Police Department Case No. E193640422_1912300103 Event Chronology, bates-stamped 20-387COT3419 - 20-387COT3422

212.    Tucson Police Department Case No. 1702280069 Evidence Sheet, bates-stamped 20-387COT3423

213.    Tucson Police Department Case No. 1702280075 Evidence Sheet, bates-stamped 20-387COT3424

214.    Tucson Police Department Case No. 1912300103 Evidence Sheet, bates-stamped 20-387COT3425

215.    Tucson Police Department Case No. E162800222 1610060138 Individual Unit History, bates-stamped 20-387COT3426 - 20-387COT3458

216.    Tucson Police Department Case No. E170590058 1702280069 Individual Unit History, bates-stamped 20-387COT3459 - 20-387COT3473

217.    Tucson Police Department Case No. E170590079 1702280075 Individual Unit History, bates-stamped 20-387COT3474

218.    Tucson Police Department Case No. E193551208 1912210244 Individual Unit History, bates-stamped 20-387COT3475 - 20-387COT3478

219.    Tucson Police Department Case No. E193640422 1912300103 Individual Unit History, bates-stamped 20-387COT3479 - 20-387COT3481

220.    Tucson Police Department Case No. E162800222 1610060138 Unit History, bates-stamped 20-387COT3482 - 20-387COT3483

221.    Tucson Police Department Case No. E170590058 1702280069 Unit History, bates-stamped 20-387COT3484 - 20-387COT3489

44

222.    Tucson Police Department Case No. E170590079 1702280075 Unit History, bates-stamped 20-387COT3490

223.    Tucson Police Department Case No. E193551208 1912210244 Unit History, bates-stamped 20-387COT3491 - 20-387COT3492

224.    Tucson Police Department Case No. E193640422 1912300103 Unit History, bates-stamped 20-387COT3493 - 20-387COT3494

225.    Tucson Police Department Case No. 1610060138 Official Report, bates-stamped 20-387COT3495 - 20-387COT3513

226.    Tucson Police Department Case No. 1702280069 Official Report, bates-stamped 20-387COT3514 - 20-387COT3540

227.    Tucson Police Department Case No. 1702280075 Official Report, bates-stamped 20-387COT3541 - 20-387COT3574

228.    Tucson Police Department Case No. 1912210244 Official Report, bates-stamped 20-387COT3575 - 20-387COT3584

229.    Tucson Police Department Case No. 1912300103 Official Report, bates-stamped 20-387COT3585 - 20-387COT3600

230.    Tucson Police Department Case No. 1610060138 Photographs, bates-stamped 20-387COT3601 - 20-387COT3622

231.    Tucson Police Department Case No. 1702280075 Photographs, bates-stamped 20-387COT3623 - 20-387COT3652

232.    Tucson Police Department Case No. 1912210244 Photographs, bates-stamped 20-387COT3653 - 20-387COT3683

233.    Tucson Police Department Case No. 1912300103 Photographs, bates-stamped 20-387COT3684 - 20-387COT3697

234.    Intersection of Prince and Campbell Google Map, bates-stamped 20-387COT3698

235.    Sonora Behavioral Health Response to Subpoena, bates-stamped 20-387COT3699

236.   Certified copy of Tucson City Court File for Citation 21220489, bates-stamped 20-387COT3700 – 20-387COT3717

237.   Certified copy of Tucson City Court File for Citation 21234967, bates-stamped 20-387COT3718 – 20-387COT3731

238.   Certified copy of Tucson City Court File for Citation 21739406, bates-stamped 20-387COT3732 – 20-387COT3735

239.   Pima County Board of Supervisors Ordinance 2021-13 regarding Pima County Medical Examiner fees, bates-stamped 20-387COT3736 – 20-387COT3738

240.   Tucson Fire Department Manual of Operations Section 100, Organization, bates-stamped 20-387COT3739 – 20-387COT3798

241.   Tucson Fire Department Administrative Manual, Rules of Conduct/Manual of Operations, Section 200, Personnel and Employee Services, bates-stamped 20-387COT3799 – 20-387COT3965

242.   Tucson Fire Department Administrative Manual, Section 300, Safety and Wellness, bates-stamped 20-387COT3966 – 20-387COT4080

243.   Tucson Fire Department Manual of Operations, Section 400, Facilities, Vehicles and Equipment, bates-stamped 20-387COT4081 – 20-387COT4144

244.   Tucson Fire Department Administration Manual, Section 500, Training, bates-stamped 20-387COT4145 – 20-387COT4152

245.   Tucson Fire Department Manual of Operations, Section 600, Medical Administration, bates-stamped 20-387COT4153 – 20-387COT4202

246.   Tucson Fire Department Administrative Manual, Section 800, Communications, bates-stamped 20-387COT4203 – 20-387COT4205

247.   Tucson Fire Department Manual of Operations, Section 900, Budget, Finance, and Billing, bates-stamped 20-387COT4206

248. Certified copies of Cochise County Superior Court Case CR201200657, bates-stamped 20-387COT4207 – 20-387COT4234

249. Certified copies of Cochise County Superior Court Case CR201200523 documents, bates-stamped 20-387COT4235 – 20-387COT4260

250. Certified copies of Cochise County Superior Court Case CR2008000659 documents, bates-stamped 20-387COT4261- 20-387COT4278

251. Certified copies of United States District Court Case 4:09-mj-01667 documents, bates-stamped 20-387COT4279 – 20-387COT4284

252. JOHNSON,T-AXON_Body_2_Video_2020-03-22_2226, bates-stamped 20-387COT4285

253. Copy of Cochise County Superior Court Case CR201200523 documents UNCERTIFIED, bates-stamped 20-387COT4286 – 20-387COT4311

254. Copy of Cochise County Superior Court Case CR201200657 documents UNCERTIFIED, bates-stamped 20-387COT4312 – 20-387COT4338

255. Curriculum Vitae of Joshua B. Gaither, M.D., including publications, bates-stamped 20-387COT4339 – 20-387COT4402

256. Curriculum Vitae of Jennifer Chen, M.D., including publications, bates-stamped 20-387COT4403 – 20-387COT4404

257. Sample spit sock, bates-stamped 20-387COT4405

258. Damien Alvarado's BMW X5, Plate CRZ4628, VIN: 5UXFA53563LV83669, bates-stamped 20-387COT4406

259. TARP, bates-stamped 20-387COT4407

260. Transport hood, bates-stamped 20-387COT4408

261.   Ryan Ake's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, and Training/Course Transcripts, bates-stamped 20-387COT4409 – 20-387COT4464

262.   Sean Yeandle's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, and Training/Course Transcripts, bates-stamped 20-387COT4465 – 20-387COT4520

263.   Nicolo Solarino's SALETC and Post-Basic Class Syllabus/Training, SALETC/Post Basic Daily Sign In Sheets, Training/Course Transcripts, Taser Recertification Training History, and Training Summary, bates-stamped 20-387COT4521 – 20-387COT4563

264.   Francisco Santa Maria's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts, bates-stamped 20-387COT4564 – 20-387COT4595

265.   Joseph Gradias's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts, bates-stamped 20-387COT4596 – 20-387COT4623

266.   Henry (Mike) Gamez's SALETC and Post-Basic Class Syllabus/Training and Training/Course Transcripts, bates-stamped 20-387COT4624 – 20-387COT4653

267.   Banner University Medical Center Medical Records, bates-stamped 20-387COT4654 – 20-387COT4939

268.   Transcript of audio interview of Joseph Gradias, bates-stamped 20-387COT04940 – 20-387COT4959

269.   Transcript of audio interview of Nicolo Solarino, bates-stamped 20-387COT4960 - 20-387COT4995

270.   Transcript of audio interview of Ryan Ake, bates-stamped 20-387COT4996 – 20-387COT5019

271.   Transcript of audio interview of Mike Gamez, bates-stamped 20-387COT5020 – 20-387COT5051

272.   Transcript of audio interview of Sean Yeandle, bates-stamped 20-387COT5052 – 20-387COT5072

273.   Curriculum Vitae/Resume of Rico Acevedo, bates-stamped 20-387COT5073 – 20-387COT5074

274.   Tucson Police Department Pulse Graph Taser Record for Officer Solarino, bates-stamped 20-387COT5075

275.   Defendants may also use a compilation of the BWC videos listed above, a copy of which will be provided to Plaintiff prior to trial.

## X.    LIST OF DEPOSITIONS

Portions of depositions that will be read at trial must be listed by the party intending to introduce the same and must include the page and line numbers. A statement of either UNCONTESTED or CONTESTED shall follow every identified portion of each listed deposition. If contested, a brief statement of the objection by the opposing party shall follow the listed portion of the deposition to be offered.

Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be permitted at trial absent good cause.

## XI.   JURY TRIAL or BENCH TRIAL

### A. For a Jury Trial

Trial briefs (only upon request of the Court), proposed voir dire, deposition testimony, objections to exhibits and depositions, stipulations, interrogatories to the jury, and stipulated jury instructions shall be filed thirty (30) days prior to trial unless otherwise directed by the Court. Jury instructions which are not agreed upon, together with a concise argument in support of the instruction, shall be filed with the Court and served upon each party at least (30) days before trial. Objections to the non-agreed upon jury instructions shall be filed with the Court and served upon each party

49

(14) days thereafter. No replies shall be permitted without prior approval from the Court. All proposed jury instructions shall conform with Local Rule 51. Motions in limine shall be filed and served (14) days thereafter. No replies shall be permitted without prior approval from the Court.

**B. For a Bench Trial**

Trial briefs (only upon request of the Court), objections to exhibits, objections to deposition testimony, motions in limine, and stipulations shall be filed and serve at least (30) days prior to trial. Proposed findings of facts and conclusions of law (only upon request of the Court) shall be filed (14) days prior to trial, or as otherwise directed by the Court.

**C. PROBABLE LENGTH OF TRIAL**

**Each party shall identify the estimated length of time it will take to present its case.**

Plaintiff: Plaintiff agrees with Defendants that the parties will need a total of 8-10 days for trial. Plaintiff estimates needing approximately 3-4 days to present her case. This includes Plaintiff's presentation of percipient fact witnesses who were on scene on the day of death, medical testimony of those who performed the autopsy, and damages witnesses.

Defendants: Defendants propose that the parties will need a total of 8-10 days for trial depending on the Court's rulings on motions in *limine.* Defendants intend to cross-examine City employees that are called in Plaintiff's case-in-chief, and do not plan to recall said witnesses unless some unforeseen circumstances arise during trial. This will streamline the presentation of evidence and will likely result in Defendants needing only 2-3 days to present its case beyond the evidence elicited during Plaintiff's case-in-chief. Plaintiff only listed damage witnesses herein, so as of the filing of this pleading, Defendants are unsure who Plaintiff will be calling to establish his prima facie case against the five (5) remaining individually named Defendants.

### D. ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT

**A. Pending Motions: Identify all motions that remain pending on the docket as of the date of this Joint Proposed Pretrial Order.**

No currently pending motions, but both Defendants and Plaintiff intend to file motions *in limine* seeking pretrial evidentiary rulings within two weeks of filing this proposed Joint Pretrial Order.

**B. Any other information that may be helpful to the Court.**

Defendants contend that Plaintiff lacks evidence to prove causation, a necessary element to establish the claims alleged against each individually named defendant. This Court has already noted this issue when it ruled on the Defendants' motion for summary judgment. (*See* Doc. 131 at 31-32, fn. 14 and fn. 15.) Defendants intend to file a written Rule 50(a) motion, after Plaintiff presents her case-in-chief, seeking judgment as a matter of law based on this issue. Also, depending on the evidence presented during Plaintiff's case-in-chief, Defendants will reassert that they are entitled to qualified immunity protection and seek judgment as a matter of law for this reason too in their Rule 50(a) motion.

///
///
///
///
///
///
///
///
///
///
///

1

**CERTIFICATION**

2      Undersigned counsel for each of the parties in this actions do hereby approve and

3      certify:

4          1.  All discovery has been completed.

5          2.  The identity of each witness has been disclosed to opposing counsel.

6          3.  Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been

7              disclosed and shown to opposing counsel.

8          4.  All other form and content of this proposed Joint Pretrial Order.

9

10

11      DATED: September 9, 2025.             DATED: September 9, 2025.

12

13      CITY ATTORNEY                         LAW OFFICE OF PAUL GATTONE
        By   /s/ Michelle R. Saavedra        By   /s/ Paul Gattone **w/permission**
14      Michelle R. Saavedra                 Paul Gattone
        Principal Assistant City Attorney    Attorney for Plaintiff
15

16      CITY ATTORNEY
        By   /s/ Tiffiney D. Franks
17      Tiffiney D. Franks
        Principal Assistant City Attorney
18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on September 9, 2025, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
4    Notice of Electronic Filing to the following CM/ECF registrants:

5    Paul Gattone
Law Office of Paul Gattone
6    301 South Convent
Tucson, Arizona 85701
7    gattonecivilrightslaw@gmail.com
    *Attorney for Plaintiff*
8

9    By M.Piper/rw

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28