Michelle R. Saavedra
Tiffiney D. Franks
Principal Assistant City Attorneys for
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ  85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Tiffiney.Franks@tucsonaz.gov
State Bar No. 40313
Attorneys for Defendants Nicolo Solarino, Sean Yeandle, Henry Gamez, Ryan Ake, and Joseph Gradias, (hereafter "Defendants")

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Briseno, on her own behalf and as the personal representative of the estate of Damian Eryko Alvarado,<br><br>Plaintiff,<br><br>vs.<br><br>Nicolo Solarino (Tucson Police); Sean Yeandle (Tucson Police); Henry Gamez (Tucson Police); Ryan Ake (Tucson Police); Joseph Gradias (Tucson Police); and Justin Canovali (private citizen), all in their individual capacities,<br><br>Defendant. | No. 4:22-cv-00132-RCC<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 3 RE: TUCSON SENTINEL EVENT REVIEW BOARD (SERB) REVIEW AND REPORT**<br><br>(Assigned to Hon. Raner C. Collins) |

Defendants City of Tucson, Nicolo (aka "Nick") Solarino, Sean Yeandle, Henry Gamez, Ryan Ake, Joseph Gradias, (hereinafter "Defendants"), through undersigned counsel, pursuant to the LRCiv 7.2(l), the Court's May 12, 2025, Order (Doc. 138), and the Court's July 17, 2025, Order (Doc. 145), respectfully ask the Court to rule *in limine* to preclude Plaintiff from using, referring to, eliciting testimony about, making arguments relating to, or in any way relying on the findings, conclusions, opinions, critiques, comments, or any content of the "Report of the Tucson Sentinel Event Review Board (SERB) on the Deaths in Custody of Mr. Damien Alvarado and Mr. Carlos Adrian Ingram-Lopez,"

1

published on September 18, 2020 (Exhibit A), for the reasons detailed in the following Memorandum of Points and Authorities.

### LRCiv 7.2(l) Certification of Counsel

After personal consultation and sincere efforts to do so undersigned counsel avers that the parties conferred on the issues raised herein and were unable to satisfactorily resolve the matters without filing this motion and seeking this Court's intervention.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Background**

In early-2020, just as the COVID-19 pandemic was spreading throughout the world and Tucson, AZ, the Tucson Police Department ("TPD") experienced two (2) in-custody deaths; one was the death of the decedent in this case, Damien Alvarado, the other was another young man named Carlos Adrian Ingram-Lopez.

TPD convened the Tucson Sentinel Event Review Board ("SERB") to review both incidents because "TPD leadership believes that any death in custody is a tragedy that should be carefully reviewed and understood, and improvements to procedures implemented to reduce the chance that any such event can happen in the future." (Exhibit A at 1.) The review was conducted pursuant to TPD's internal policies and procedures, specifically TPD General Order "GO" 2092 and GO 3200. (Exhibit B and C, respectively.)

The SERB "is a multi-stakeholder group, including representatives from TPD, the Tucson Fire Department and its Emergency Medical Services ("TFD" or "EMS"), the Public Safety Communications Department, staff from the offices of the Mayor and Councilmembers, the Community Police Advisory Review Board ("CPARB"), and a diverse array of community participants, including experts in critical care, the care of individuals with mental or behavioral health issues, and experts in cultural literacy and racial justice." (Exhibit A at 1; *see also id.* at 56, Appendix B.) In addition, John Hollway, Executive Director of the Quattrone Center for the Fair Administration of Justice from the University of Pennsylvania Carey Law School ("Quattrone Center") and Michael Scott, Clinical Professor and Director of the Center for Problem-Oriented Policing at the Watts College of

Public Service and Community Solutions at Arizona State University "guided the SERB in a process to identify the acts, omissions, management, institutional, social, and environmental conditions that resulted in the deaths of two Tucson community members while in the custody of the TPD in early 2020, and further why the TPD failed to disclose one of the deaths to the community in a timely fashion." (Exhibit A at 1.)

The SERB "identified 32 contributing factors and conditions leading to the two deaths. From these, the Quattrone Center and the Center for Problem-Oriented Policing worked with the stakeholder group to propose 53 recommendations for modifications to policies, procedures, supervision, and the environment in which our first responders are making decisions that we feel will provide substantial improvements to ensuring the safety of the Tucson community, including both the people of Tucson and officers and EMS in the TPD and TFD." (*Id.*) On or about September 18, 2020, the SERB published their 78-page report, which included Appendices. (*Id.*)

Plaintiff listed the SERB report as her first exhibit in the Joint Pretrial Order (Doc. 148 at 22.) Defendants now move to preclude that document, and any testimony or other evidence relating to its content, and the SERB review, which resulted in said report, for all the reasons discussed next.

II. **Legal Argument**

   a. **The SERB report itself is fraught with hearsay and double hearsay, and Plaintiff did not disclose anyone involved in the review or report as a witness; thus, this evidence should also be precluded under Fed. R. Evid. 802 and 805.**

As a threshold matter, Plaintiff should be precluded from using the SERB report as an exhibit at trial, and her counsel must also be precluded from referencing any of its content with any witness called to testify because its content is inadmissible hearsay. Fed. R. Evid. 802.

First and foremost, none of the individually named Defendant police officers were personally involved in the SERB review or the authoring of the SERB report. (*See* Exhibit

3

A at 56, Appendix B.) Plaintiff should therefore be precluded from questioning these defendants about the SERB review or the contents of the report itself, as any testimony they could offer would lack personal knowledge and a proper evidentiary foundation as the defendants lack any foundation to provide testimony about this exhibit. Fed. R. Evid. 602.

The SERB report also includes opinions from experts involved in the review, which are hearsay and should be precluded under Fed. R. Evid. 802, because these experts were not disclosed as witnesses or experts in this lawsuit. For example, SERB member Dr. Andrew Tang's, Trauma Medical Director at Banner University Medical Center, explanation of excited delirium. (Exhibit A at 27-28.)

It is not even clear who on the panel of participants, if any, actually authored the report at issue. More importantly, Plaintiff never disclosed any named participant as a witness. She named Deputy Monica Prieto in the Joint Pretrial Order, but she was only a facilitator – not a SERB participant. There is also no expert in this case. All of the content of the exhibits is hearsay or double hearsay and must be precluded under Fed. R. Evid. 802 and 805.

      **b. SERB reviews are designed to be a subsequent remedial measure, thus all evidence relating to said review should be precluded under Fed. R. Evid. 407.**

"Federal Rule of Evidence 407 protects parties that take 'remedial measures' following an incident—i.e., measures that 'would have made an earlier injury or harm less likely to occur'—by preventing factfinders from considering such measures to prove 'culpable conduct.'" *Aguilar v. City of Los Angeles*, 853 Fed. Appx. 92, 95 (9th Cir. 2021); Fed. R. Evid. 407. Here, the SERB resulted in "53 recommendations for modifications to policies, procedures, supervision, and the environment in which our first responders are making decisions…" (Exhibit A at 1.) More specifically, "[t]he key question driving [SERB's] recommendations was 'If this recommendation had been in place at the time of the deaths of Mr. Alvarado or Mr. Ingram-Lopez, would either man be alive today?'" (*Id.* at

2.) The entire review and resulting report must be precluded as a subsequent remedial measure under Rule 407.

The focus here should be on the public policy of encouraging law enforcement agencies to engage in subsequent remedial measures. Law enforcement agencies must be free to engage in these extensive post-incident reviews with the intent to improve training, policies, and/or practices without fearing that those efforts will later be used against them, or have a prejudicial effect, in a later lawsuit. Fed. R. Evid. 407; *see also Luera v. Snyder,* 599 F. Supp. 1459, 1463 (D. Colo. 1984).

In this case, TPD has adopted internal policies and procedures that specifically provide for the creation of a SERB for the sole purpose of conducting the "review of a critical incident or other matter of heightened community interest." (Exhibit C.) TPD has found that a "SERB promotes trust and legitimacy with the public by including community members as part of the review process, increases transparency of department actions, improves police services, and provides an additional forum for department accountability." (*Id.*) TPD's willingness to engage in this type of subsequent remedial measure should not be stifled because of fear that these reviews may have a prejudicial effect in a lawsuit.

For all the foregoing reasons, the SERB review, report, and all evidence relating to them should be precluded under Rule 407 alone.

    **c. Evidence of the review and SERB report are also unduly prejudicial, will only confuse and mislead the jury, and will impinge on their duty as the fact finders to determine the issues in this case.**

The issues in this lawsuit have been significantly narrowed since Plaintiff filed her Complaint. All that remain are Plaintiff's Fourth Amendment excessive force claims under 42 U.S.C. § 1983, against Defendants Solarino, Yeandle, Gamez, Ake, and Gradias. The jury in this case will likely be instructed consist with the Model Civil Jury Instruction, 9.25, which will provide them with the well-established "objectively reasonable" Fourth Amendment standard, and the list of "circumstances" for them to consider in "balancing the nature and quality of the intrusion on Fourth Amendment rights against the government's

5

1  countervailing interest in the force used." (*See* Model Civil Jury Instruction, 9.25. Particular
2  Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force.)

3  "The 'reasonableness' of a particular use of force must be judged from the perspective
4  of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham
5  v. Connor*, 490 U.S. 386, 396 (1989); see *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)
6  ("A court must make this determination from the perspective of a reasonable officer on the
7  scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.");
8  see also *Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[A]n 'officer's
9  use of force cannot be deemed excessive based on facts that he [or she] reasonably would
10 not have known or anticipated.'").

11 The SERB review went well beyond considering what the Defendants knew at the
12 time, and the review was not focused on the perspective of a reasonable officer on the scene.
13 Rather, the SERB "was composed of both community members as well as staff from the
14 agencies that participated in the events leading up to the deaths (e.g., the dispatch and
15 response team answering 911 calls within the Public Safety Communications Department
16 ("PSCD"), TPD, and Emergency Medical Services within TFD). The SERB was designed
17 to allow for robust discussion of the various aspects of the cases – TFD's, PSCD's and TPD's
18 handling of calls for assistance made by members of the Tucson community, understanding
19 the various complications presented by the cases (law enforcement, cultural/racial, clinical
20 and mental health, among others), and to provide an ability to understand not just what the
21 officers responding to these calls did, but why they acted the way they did." (Exhibit A at
22 4.) Also, "members of the SERB led conversations about the role of race and equity in the
23 context of the sentinel event review. Members took part in self assessments on cultural
24 proficiency and learned from subject matter experts" to "strengthen[] the capacity of the
25 board to make actionable recommendations to the police department." (*Id.* at 5)

26 "The court may exclude relevant evidence if its probative value is substantially
27 outweighed by a danger of one or more of the following: unfair prejudice, confusing the
28 issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

6

evidence." Fed. R. Evid. 403. In this case, the SERB review and report must be excluded under Rule 403. Here, the SERB report includes information about a completely unrelated and irrelevant second incident and death - Carlos Adrian Ingram-Lopez – and the analysis, finding, conclusions, and recommendations are all meant to address mainly that other incident. A simple term search shows that Ingram-Lopez's name appears a total of eighty-six (86) times throughout the document. But the potential for Rule 403 issues of unfair prejudice, confusion or misleading of the issues, does not end there.

Even while acknowledging that there were many ways in which the two incidents differ, their report still made a point to highlight minor similarities; at least two of which, the ingestion of drugs and outstanding arrest warrants, were completely unknown to the officers involved in the incidents. (*See* Exhibit A at 15-16.)

Additionally, the SERB report highlights the "contributing factors" for each death, as determined by the SERB, and these too go well beyond facts known to the officers involved in each incident. The SERB created "fishbone diagrams" depicting the category of factors – communication, leadership, medical, procedures, environment, and equipment – with the specific facts the SERB determined as significant. (*Id.* at 17-18.)

The report also includes speculative commentary, which should not be allowed in evidence at trial. For example, the report states that "[i]n both cases, the use of spit socks may have increased the decedent's anxiety and contributed to the undesired outcome by causing further distress…" (Exhibit A at 26.)

Some SERB recommendations are in no way related to the officers' actions during these incidents and could not possibly be relevant to the issues in this lawsuit. For example, the SERB report recommended the following actions be taken by "Tucson and Pima County Government Officials,":

> "The City of Tucson and County of Pima governments should work to expand drug treatment—particularly for harmful drugs such as cocaine and methamphetamine—and ensure that such treatment is readily available for all who need it, including the availability of a qualified detoxification facility like the Crisis Response Center, which currently assists TPD in responding

7

to cases of drug use by community members whose behavior is deemed threatening to others." (Exhibit A at 30.)

Some recommendations will confuse the jury about the issues in this case because they relate to issues the jury will be asked to evaluate, yet also include speculation and prejudicial commentary. For example, the report includes the following under the SERB's evaluation of the spit sock usage:

> "The SERB does not know with certainty whether the spit sock contributed to or exacerbated any medical issues in either of these cases. Members of the SERB were concerned, however, about the dehumanizing appearance of placing a hood on an individual and also concerned that not enough is known about the potential clinical impact of individuals in restraints having to breathe through the spit sock. Although the devices are designed to allow for a free airflow through the material, the negative effect might be psychological rather than physical, contributing to a person's sense of suffocation or exacerbating any claustrophobic feelings, and raising blood pressure and anxiety." (Exhibit A at 37.)

The SERB review also included recommendations to address "[s]tructural and systemic racism," and the report includes commentary such as: "the SERB believed strongly that understanding how racism permeates social, economic, and political institutions is important background knowledge for these sentinel event reviews…," which is irrelevant to the issues in this trial, and potentially misleading, confusing, and unfairly prejudicial.

The above are just some examples of how the content of the SERB report, and testimony, argument, or reference to the SERB review would be misleading or confusing to the jury in this trial, or worse unduly prejudicial to the Defendants. There are many more examples that Defendants could provide, but for now they will reserve their right to address the prejudicial effect of parts not specifically addressed herein for a later time, if the need arises.

For all the foregoing reasons, the SERB review, the report, and all evidence or reference to them, should be precluded from this trial pursuant to Fed. R. Evid. 403.

8

**Conclusion**

For the foregoing reasons, Plaintiff should be precluded from using, referring to, eliciting testimony about, making arguments relating to, or in any way relying on the findings, conclusions, opinions, critiques, comments, or any content of the "Report of the Tucson Sentinel Event Review Board (SERB) on the Deaths in Custody of Mr. Damien Alvarado and Mr. Carlos Adrian Ingram-Lopez," published on September 18, 2020. (Exhibit A)

DATED: September 23, 2025.

        City Attorney

        By /s/ *Michelle R. Saavedra*
           Michelle R. Saavedra
           Principal Assistant City Attorney

           /s/ *Tiffiney D. Franks*
           Tiffiney D. Franks
           Principal Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul Gattone
Law Office of Paul Gattone
301 South Convent
Tucson, Arizona 85701
gattonecivilrightslaw@gmail.com
   *Attorney for Plaintiff*

By M.Piper/rw