Michelle R. Saavedra
Tiffiney D. Franks
Principal Assistant City Attorney for
Michael G. Rankin
CITY ATTORNEY
P.O. Box 27210
Tucson, AZ 85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
Michelle.Saavedra@tucsonaz.gov
State Bar No. 25728
Tiffiney.Franks@tucsonaz.gov
State Bar No. 40313
*Attorneys for Defendants Nicolo Solarino, Sean Yeandle, Henry Gamez, Ryan Ake, Joseph Gradias, (hereafter "City Defendants")*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Briseno, on her own behalf and as the personal representative of the estate of Damian Eryko Alvarado, | No. 4:22-cv-00132-RCC |
| Plaintiff, | **AMENDED DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| vs. | |
| Nicolo Solarino (Tucson Police); Sean Yeandle (Tucson Police); Henry Gamez (Tucson Police); Ryan Ake (Tucson Police); Joseph Gradias (Tucson Police); and Justin Canovali (private citizen), all in their individual capacities, | (Assigned to Hon. Raner C. Collins) |
| Defendants. | |

Defendants Nicolo ("Nick") Solarino ("Solarino"), Sean Yeandle ("Yeandle"), Henry ("Mike") Gamez ("Gamez"), Ryan Ake ("Ake"), and Joseph Gradias ("Gradias") (collectively "Defendants"), by and through undersigned counsel, hereby move for an entry of judgment as a matter of law on Plaintiff's Fourth Amendment claims against each of the named defendants, for the reasons discussed next. This motion is supported by the following Memorandum of Points and Authorities.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. Motion for Judgment as a Matter of Law Standard**

Rule 50(a) permits this Court to remove claims, defenses, or entire cases from the jury when there is no "legally sufficient evidentiary basis" to support a particular outcome. *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007). A party must be "fully heard" before judgment as a matter of law may be granted, and the motion must specify the judgment sought and the law and facts entitling the moving party to that judgment. Fed. R. Civ. P. 50(a)(1). Where the evidence permits only one reasonable conclusion, judgment as a matter of law is appropriate.

**II. Fourth Amendment Legal Standard**

Plaintiff asserts that Defendants used excessive force in violation of Damian Alvarado's Fourth Amendment rights. To determine whether a Fourth Amendment violation has occurred, courts balance the nature and quality of the intrusion on the individual's rights against the countervailing governmental interests to determine whether the officer's conduct was objectively reasonable under the totality of the circumstances. *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

The Ninth Circuit applies a structured analysis in evaluating excessive force claims. First, the Court assesses the severity of the intrusion by examining the type and amount of force used. Second, the Court evaluates the governmental interests at stake, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Espinosa*, 598 F.3d at 537. Finally, the Court balances the gravity of the intrusion against the governmental need for that intrusion. Id. These are known as the *Graham* factors. Of these factors, the most important is whether the suspect posed an immediate threat to the safety of officers or others. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005)). The

degree of force used is permissible only when a sufficiently strong governmental interest justifies its use. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001).

Courts also consider whether the suspect complied with officers' commands or instead refused to comply. *Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011). In addition, the Court may examine other specific factors relevant to the totality of the circumstances, including the overall danger presented by the situation and how that danger informs the reasonableness of the officers' actions. *Id.*

The reasonableness inquiry requires careful balancing of the individual's Fourth Amendment interests against the governmental interests at stake. *Deorle*, 272 F.3d at 1279. This analysis must account for the fact that officers are often required to make split-second decisions in circumstances that are tense, uncertain, and rapidly evolving. *Id.* at 1283 (quoting *Graham*, 490 U.S. at 396–97). Accordingly, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *Graham*, 490 U.S. at 396.

**II. Plaintiff Did Not Meet Her Burden To Prove Nick Solarino, Ryan Ake, or Sean Yeandle's Use Of Force Was Excessive**

The evidence presented at trial proves that Defendants Solarino, Ake, and Yeandle used the least level of force to safely detain Damien Alvarado ("Alvarado") on March 22, 2020. Plaintiff did not present any evidence in his case-in-chief that shows any use of force was unreasonable or excessive[1], thus the Court should find in favor of these defendants, as a matter of law.

These Defendants were called as witnesses in Plaintiff's case-in-chief and their testimonies prove that each one of them were operating under the reasonable belief that Alvarado was the potentially armed fleeing homicide suspect from the nearby shooting

---

[1] This Court has already ruled that Nick Solarino's use of force prior to Ryan Ake and Sean Yeandle's arrival was reasonable, justified, and not a violation of Alvarado's Fourth Amendment rights. (Doc. 131 at 46:10-11). None of the evidence during this trial was contrary to the evidence this Court already considered when making this ruling and said ruling should stand.

incident in midtown, in addition to being the suspect who fled the serious car crash he caused at Campbell Ave. and Prince Rd.

In addition, when Ake and Yeandle arrive on scene – before they use any force to detain and control Alvarado – they heard over the police radio that Alvardo was "fighting" with Solarino. They then personally observed Alvarado fighting with Solarino while running up to assist. Ake's concern for Solarino's imminent safety is undisputed – we all heard him yell out to Solarino, "hold on, Nick" "hold on."

These is no dispute – by the time the three officers are collectively using force to detain Alvarado they all reasonably believed that he had committed severe and dangerous crimes; homicide and aggravated assault on a police officer,

As the situation progresses, these three officers used the least level of force possible to try and get Alvarado under control and detained. Plaintiff did not present any evidence for a jury to consider that if believed would show their use of force was not consistent with their training, or that it was unreasonable or excessive under any local or national standards for police officers. The jury only heard that all the force used was reasonable based on the circumstances these officers faced at the time.

The multiple body worn camera videos, and all the testimony from the officers, proves that at no time during this encounter did Alvarado become cooperative. These officers were giving multiple commands throughout the struggle, such as "you stop," "stop moving" "give me your hands" "stop moving right now." Meanwhile, Alvarado is responding by saying things like, "stop tasing me motherfuckers" and "if I get up, I'm going to fuck you up."

At first, Alvarado is actively aggressive – he stands up again even with all three officers trying to get him to the ground. Once on the ground he is seen, and it was described, that he is actively resisting arrest/detention, tensing up, and trying to get up to potentially flee again. The officers were attempting to get Alvarado detained and under control as quickly as they could to get him medical treatment, and it was Alvarado's continued resistance that prolonged that struggle. Even so, the struggle once he is prone on the ground

4

lasted approximately 3 minutes and 44 seconds – Plaintiff's counsel established this yesterday during Solarino's testimony.

The evidence regarding the level of force used is undisputed – Yeandle struck him twice – with no effect, and then the only level of force used by these officers was "soft empty hand controls." Alvarado resisted the entire 3 minutes and 44 seconds before officers were able to finally handcuff him and apply the first TARP.

Then for the next 5 minutes (*see* Defendants' Exhibit 77 at 5:14-10:24), Alvarado was in the recovery position with his legs fully extended. The only force used was to ensure he remained in that position until Tucson Fire Department ("TFD") arrived to medically assess him.

Throughout this trial, Plaintiff's counsel continually argues that the fact Alvarado said "I can't breathe" is somehow probative of the excessive force claims in this case, but the evidence before this Court and the jury, is that at no when he was saying this did the officers observe Alvarado stop breathing. More importantly, contrary to Plaintiff's statements in openings, and her counsel's extensive questioning about positional asphyxiation, the evidence here does not show these officers "squeezed the life or breath from Alvarado," or that his death was a result of "positional asphyxiation."

In addition, the majority of the time Alvarado is making the statement that he cannot breathe, he is seen and heard yelling this, and none of the defendant officers are using any force against him. Based on the evidence in trial, the fact that Alvarado yells that he cannot breathe is not probative of the claims against the officers. Defendants submit that this Court should not give it any probative weight when deciding this motion.

At the summary judgment phase, Plaintiff relied on *Drummond v. City of Anaheim,* 343 F.3d 1052, 1056 (9th Cir. 2003) (holding that officers "press[ing] their weight on [the suspect's] neck and torso as he lay handcuffed on the ground and begged for air" is a "severe use of force") to argue that the officers use of bodyweight was a "severe use of force," and the Court relied on that argument and the factual allegations being made at that time, as it must. (*See* Doc. 131). But now the Court has heard uncontroverted testimony that these

5

officers were never using their entire body weight on Alvarado. To the contrary, the only time Yeandle's weight was fully distributed on Alvarado was when Alvarado lifted Yeandle up, and Yeandle was on Alvarado's back, like "a backpack." When Alvarado was on the ground, Yeandle was straddling him and his knees were on the ground.

Likewise, in the summary judgment phase, Plaintiff argued that Ake and Yeandle had their knees on Alvarado's neck during the struggle, and the Court had to take these factual allegations as true, then. (*See* Doc. 131 at 31:17-22). But now the undisputed evidence is that neither officer had their knees on Alvarado's neck during the struggle to detain him. Even Dr. Ashley Lukefahr's testimony relating to Alvarado's injuries proves that no officer used pressure on Alvarado's neck during this struggle. She testified that she thoroughly examined the neck area, both externally and internally, and there was no evidence of injuries to his neck. She also testified that she did not see any evidence that anyone restricted his airway.

For all the foregoing reasons, the Court should find that Solarino's, Ake's, and Yeandle's use of force was not a violation of Alvarado's Fourth Amendment rights, and find in their favor, as a matter of law.

**III. Plaintiff Did Not Meet Her Burden To Prove Gamez's or Gradias's Use Of Force Was Excessive**

No reasonable jury could find either Gamez or Gradias used excessive force against Alvarado based on the evidence now before them. The trial evidence, including the testimony of the Defendant officers Ryan Ake, Sean Yeandle, Henry "Mike" Gamez, and Nicolo ("Nick") Solarino, plus the numerous body-worn camera video exhibits all show that Gamez and Gradias use of force, if any, was minimal – not excessive.

For Gradias, Plaintiff failed to present *any evidence* relating to Gradias' use of force, let alone evidence sufficient for our jury to find it was excessive. Gradias was mentioned once during Plaintiff's case-in-chief during Ake's testimony. Based on undersigned counsel's recollection, all Ake did was identify Gradias by referencing the fact that he was the only person in Tucson wearing a jacket at that time of year. The jury has absolutely no

evidence to find Gradias used excessive force against Alvarado, and he must be dismissed as a Defendant as a matter of law.

As for Gamez, the jury heard he only used soft empty hand controls, provided direction and instructions to the other officers, and assisted in freeing Ake's knee, and Yeandle's left ankle as they both got wrapped up during the struggle to get Alvarado on the ground. Gamez also held Alvarado's legs for a brief time while the first TARP was applied. Gamez's use of force was the least of all the officers who used force during this dynamic incident. When Gamez arrived to assist, the other officers had already been fighting to get Alvarado under control and safely detained for several minutes.

Although Plaintiff has downplayed the information the officers possessed and their reasonable belief that Alvarado was the homicide suspect, at the very least, Gamez knew when he arrived on scene that Alvarado had been in a fight with officers. In addition, Gamez testified that he is trained on *Graham v. Connor*, and he trains other officers on the principles/factors applied under that case's analysis. He testified that when he was sprinting to the scene, he was doing that analysis in his head. He testified that he was prepared to use the highest level of force, if needed, based on the circumstances he believed surrounded the situation at that time. He also testified upon arriving he recognized that Alvarado was on the ground, thus no additional force was needed. Instead, he knew based on his training, knowledge, and experience, that the situation called for direction, or communication with the officers, to assist with getting Alvarado detained in handcuffs, and then the TARP device. Gamez adjusted to use the least level of force possible to assist the officers in detaining Alvarado. Gamez reasonably believed that Alvarado was the potentially armed homicide suspect and he knew Alvarado had been fighting with officers for several minutes – these are both severe, dangerous crimes. Alvarado posed an immediate threat of safety/harm to all the officers who had been fighting/struggling with him, and the civilians nearby[2].

---

[2] Gamez testified that he did not see the civilians because he was running towards the threat, but the other officers all testified that those two civilians' safety threat was on their minds.

If Alvarado was able to get free again, he would then pose an immediate safety concern to potentially the community at large. The government's interest in getting Alvarado handcuffed and securely detained in a TARP device when both Gamez and Gradias arrived significantly outweighs these individually named defendants' alleged minimal intrusion of Alvarado's Fourth Amendment rights. Plaintiff has not presented any evidence to show otherwise; thus no reasonable jury could find Gamez or Gradias used excessive force in violation of Alvarado's Fourth Amendment rights.

## CONCLUSION

For all the reasons discuss above, this Court should find in favor of all the Defendants as a matter of law.

DATED: March 26, 2026.

ROI LUSK
City Attorney

By     /s/ Michelle R. Saavedra
          Michelle R. Saavedra
          Principal Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul Gattone
Law Office of Paul Gattone
301 South Convent
Tucson, Arizona 85701
gattonecivilrightslaw@gmail.com
  *Attorney for Plaintiff*

By M.Piper/rw